# EXHIBIT 1

**Guy ENGEL**
Huissier de Justice
B.P. 2781
L-1027 LUXEMBOURG

# MODALITÉS DE LA REMISE DE L'EXPLOIT

Date de la remise: l'an deux mille *vingt deux, le vingt deux septembre*

Cet acte a été remis par l'huissier de justice soussigné dans les
conditions indiquées à la rubrique marquée d'une croix et selon les
déclarations recueillies, pour le destinataire en

○ son domicile    ○ sa résidence    ○ son siège

○ son domicile élu chez . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

⊗ *Harper S. Preamms. S.A.R.L.* . . . . . . . . . . . . . .

*41, Bld Royal* . . . . . . . . . . . . . . . . . . . . . . . .

*L-2449 Luxembourg* . . . . . . . . . . . . . . . .

comme il est dit ci-dessous.
Vérifications faites sur l'exactitude de l'adresse auprès du

○ bureau de population    ○ registre de commerce    ○ service central de législation    ○ . . . . . . . . . . . . . . . . . . . .

**Destinataire de l'exploit**

*Michael  ZINI*
*41, Bld Royal*
*L-2449 Luxembourg*

---

## A) SIGNIFICATION À PERSONNE

○ Personne physique
  au destinataire lui-même

○ Personne morale
  à Nom/Prénom(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
  qui a déclaré être habilité(e) à recevoir copie

○ Au domicile élu, au mandataire lui-même

ainsi déclaré(e), laquelle personne a accepté l'exploit

---

## B) SIGNIFICATION A DOMICILE

B.I.) Ayant trouvé    Nom/Prénom(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Qualité . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Adresse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

ainsi déclaré(e), laquelle personne a accepté de recevoir copie et de donner récépissé, sur quoi l'huissier de justice soussigné lui a remis copie de l'exploit sous enveloppe fermée ne portant que l'indication des nom, prénom(s), qualité et adresse du destinataire et le cachet de l'huissier de justice apposé sur la fermeture du pli; en outre, une copie de l'exploit ainsi qu'un avis de passage, mentionnant les indications relatives à la personne à qui copie de l'exploit a été remise - le tout sous enveloppe fermée ne portant que l'indication des nom, prénom(s), qualité et adresse du destinataire et le cachet de l'huissier de justice apposé sur la fermeture du pli - ont été laissés sur les lieux, et ce étant donné que la signification sub A) n'a pu être faite nonobstant les diligences accomplies et après diligences effectuées et vérifications faites sur l'exactitude de l'adresse

Visa de la personne rencontrée dans les lieux

B.II.) N'ayant pu trouver personne ayant qualité de recevoir la copie et donner récépissé ou qui ait accepté de recevoir la copie et de donner récépissé, étant donné

○ qu'il n'y avait personne

○ que la personne présente n'avait pas atteint l'âge de 15 ans

○ que la personne présente était le(a) requérant(e)

○ que la personne présente a refusé de déclarer
  ses nom, prénom(s), qualité et adresse

○ que la personne présente a refusé de recevoir la copie

○ que la personne présente a refusé de donner récépissé

et après diligences effectuées et vérifications faites sur l'exactitude de l'adresse
l'huissier de justice soussigné a laissé sur les lieux une copie de l'exploit ainsi qu'un avis de passage renseignant sur les modalités de signification de l'exploit, le tout sous enveloppe fermée ne portant que l'indication des nom, prénom(s), qualité et adresse du destinataire et le cachet de l'huissier de justice apposé sur la fermeture du pli, et il a en outre envoyé par lettre simple une copie de l'exploit et de l'avis de passage au destinataire dans le délai prévu par la Loi.

TOUS LES PARAGRAPHES NON MARQUÉS D'UNE CROIX SONT RÉPUTÉS NON ÉCRITS.

REMARQUE: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    Signé: Guy ENGEL

---

# AVIS DE PASSAGE

Il est porté à la connaissance du destinataire du présent avis que l'huissier de justice s'est présenté à la date et à l'adresse reprises ci-dessus pour lui signifier un exploit.

Le destinataire lui-même n'ayant pu être trouvé,

○ la copie du prédit exploit a été remise sous enveloppe fermée à . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
préqualifié(e) sub B.I.; une deuxième enveloppe contenant copie de l'exploit et le présent avis a été laissée sur les lieux.

○ la personne présente ayant refusé    □ d'accepter    □ de déclarer ses nom, prénom(s), qualité et adresse    □ de donner récépissé

○ personne ayant qualité de recevoir la copie n'ayant pu être trouvé sur les lieux,
la copie de l'exploit et le présent avis ont été laissés sur les lieux; une deuxième copie de l'exploit et copie du présent avis ont été envoyées par lettre simple au destinataire.

Date . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Signé: Guy ENGEL

Guy ENGEL
Huissier de Justice
2, rue Guido Oppenheim
L-2263 LUXEMBOURG

**ASSIGNATION**

**Devant Tribunal d'arrondissement de et à Luxembourg
siégeant en matière commerciale selon la procédure civile**

L'an deux mille vingt-deux, le vingt-deux septembre.

A la requête de

1.  **la société à responsabilité limitée BRG NOAL GP S.à r.l.**, établie et ayant son siège social au L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, immatriculée au Registre de commerce et des sociétés, Luxembourg sous le numéro B258060, représentée par son conseil de gérance actuellement en fonction, sinon par tout autre organe autorisé à la représenter légalement ;

2.  **la société en commandite spéciale NOAL SCSp** (anciennement Novalpina Capital Partners I SCSp), établie et ayant son siège social à L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen inscrite au Registre de commerce et des sociétés de Luxembourg sous le numéro B.217.345, représentée par son gérant, la société BRG NOAL GP S.à r.l., préqualifiée ;

3.  **la société à responsabilité limitée NVP 101 S.à r.l.**, établie et ayant son siège social à L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, inscrite au Registre de commerce et des sociétés de Luxembourg sous le numéro B.248.060, représentée par son conseil de gérance actuellement en fonctions, sinon par tout autre organe autorisé à la représenter légalement ;

4.  **3. la société à responsabilité limitée NVP 103 S.à r.l.**, établie et ayant son siège social à L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, inscrite au Registre de commerce et des sociétés de Luxembourg sous le numéro B.244.933, représentée par son conseil de gérance actuellement en fonctions, sinon par tout autre organe autorisé à la représenter légalement ;

5.  **la société à responsabilité limitée NOAL LuxCo North S.à r.l.** (anciennement Novalpina Capital Partners I LuxCo North S.à r.l.), établie et ayant son siège social à L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, inscrite au Registre de commerce et des sociétés de Luxembourg sous le numéro B.233.835, représentée par son conseil de gérance actuellement en fonctions, sinon par tout autre organe autorisé à la représenter légalement ;

élisant domicile en l'étude de la société à responsabilité limitée **MOLITOR Avocats à la Cour SARL**, établie et ayant son siège social à L-2763 LUXEMBOURG, 8, rue Sainte-Zithe, inscrite sur la liste V du Tableau de l'Ordre des avocats du Barreau de Luxembourg, immatriculée au Registre de Commerce et des Sociétés de Luxembourg sous le numéro B 211810, qui est constituée et qui occupera pour les parties demanderesses, représentée dans le cadre de la présente procédure par **Maître Paulo LOPES DA SILVA**, avocat à la Cour, demeurant à la même adresse,

Je soussigné, **Guy ENGEL**, huissier de justice, demeurant à L-2263 LUXEMBOURG, 2, rue Guido Oppenheim, immatriculé près le Tribunal d'arrondissement de et à Luxembourg,

ai donné assignation à :

1 / 21

1. **la société à responsabilité limitée Novalpina Capital Partners I GP S.à r.l.**, établie et ayant son siège social au L-1148 LUXEMBOURG, 16, rue Jean l'Aveugle, inscrite au Registre de commerce et des sociétés de Luxembourg sous le numéro B 217341, représentée par son conseil de gérance actuellement en fonction, sinon par tout autre organe autorisé à la représenter légalement ;

2. **Monsieur Stefano PILERI**, dirigeant de sociétés, demeurant à L-8023 STRASSEN, 4, rue du Genêt ;

3. **Monsieur Michael ZINI**, dirigeant de sociétés, demeurant professionnellement chez la société à responsabilité limitée **Harper & Pearsons SARL**, établie et ayant son siège social à L-2449 LUXEMBOURG, 41, Boulevard Royal ;

4. **la société à responsabilité limitée NOAL Luxco S.à r.l.** (anciennement Novalpina Capital Partners I Luxco S.à r.l.), établie et ayant son siège social à L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, inscrite au Registre de commerce et des sociétés de Luxembourg sous le numéro B.219.319, représentée par son conseil de gérance actuellement en fonctions ;

---

**à comparaître par ministère d'avocat à la Cour dans le délai de la loi qui est de 15 jours à 9:00 heures du matin devant le Tribunal d'arrondissement de et à Luxembourg, siégeant en matière civile selon la procédure commerciale conformément à l'article 547 du Code de procédure civile, Cité judiciaire, Bâtiment CO, L-2080 Luxembourg;**

---

**avec la déclaration, conformément aux articles 79 et 80 du Nouveau Code de Procédure Civile, que si la signification est faite à personne et que les assignées ne comparaissent pas, le jugement à intervenir sera réputée contradictoire et ne sera pas susceptible d'opposition, pour :**

---

## I.    FAITS ET RETROACTES

### A)    *PRESENTATION DU GROUPE NOAL*

#### 1.    Le Fonds

1. La société en commandite spéciale NOAL SCSp (ci-après « **Le Fonds** »), dénommée à l'origine Novalpina Capital Partners I SCSp, a été constituée en 2017 à l'initiative de trois membres fondateurs, à savoir Monsieur Stephen PEEL, Monsieur Stefan KOWSKI et Monsieur Bastian LUEKEN (ci-après les « **Fondateurs** ») à la suite de la conclusion du *Limited Partnership Agreement* (« **LPA** »)[1].

2. Les associés commanditaires du Fonds sont des investisseurs institutionnels ou des personnes privées (ci-après les « **Investisseurs** ») qui ont souscrit ensemble des engagements (« *Commitments* ») dans le Fonds à hauteur d'environ un milliard d'euros. Parmi les Investisseurs figurent des fonds de pension étatiques qui ont investi pour le compte de salariés, notamment aux Etats-Unis (à titre d'exemple, Oregon State Treasury a, dans ce cadre, investi environ 200 millions d'euros dans le Fonds) et au Royaume-Uni.

---

[1]    Pièce n°51 de MOLITOR

3. Le Fonds a également compté, parmi ses Investisseurs, les sociétés Novalpina Capital Partners I Group GP S.à r.l. (« **Group GP** ») et Novalpina Capital Partners I FP SCSp (« **Novalpina SCSp** »), deux sociétés contrôlées par les Fondateurs. Ces sociétés sont entre-temps sorties du Fonds. Ce point sera plus amplement développé ci-après.

4. L'associé commandité et le gérant (« General Partner » et ci-après « **Gérant** ») du Fonds, qui doit en tout temps agir dans l'intérêt du Fonds, est actuellement la société BRG NOAL GP S.à r.l. (ci-après « **BRG NOAL** ») et était, au moment de la constitution du Fonds, la société à responsabilité limitée Novalpina Capital Partners I GP S.à r.l. (ci-après « **Novalpina GP** »), une filiale à 100% de Group GP.

## 2. La Master Luxco et ses associés

5. La société à responsabilité limitée NOAL Luxco S.à r.l. (ci-après « **Master Luxco** ») est la *soparfi* mise en place par le Fonds afin de contrôler la vaste majorité des Sociétés Portfolio du groupe[2].

6. Master Luxco comprend les associés suivants :



- Novalpina GP (détenant environ **0,85%** des parts de Master Luxco) ;

- le Fonds (détenant <u>directement</u> environ **0,77%** des parts de Master Luxco) ;

- le Fonds (détenant <u>indirectement</u> environ **98,38%**, à travers trois entités détenues par le Fonds, à savoir la société à responsabilité limitée NVP 101 S.à r.l. (détenant environ 51.36% des parts de Master Luxco), la société à responsabilité limitée NOAL LuxCo North S.à r.l. (détenant environ 6.37% des parts de Master Luxco), et la société à responsabilité limitée NVP 103 S.à r.l. (détenant environ 40.65% des parts de Master Luxco).

## 3. Les Sociétés Portfolio

7. Le Fonds détient directement et indirectement par l'intermédiaire de Master Luxco une constellation de sociétés[3], qui elles-mêmes contrôlent des sociétés opérationnelles (ensemble les « **Sociétés Portfolio** ») dans plusieurs pays :

- **En Roumanie et Malte** : OEGH Holdings S.à r.l. et Maximums Topco S.à r.l opèrent via les sociétés *« Maxbet »* dans le secteur des casinos, des salles de machines à sous et des paris en ligne ;

- **En Estonie, Lettonie, Lituanie, Slovaquie, Croatie, Malte et Italie**: les sociétés contrôlées par le Fonds via Odyssey Europe Holdco S.à r.l. opèrent via les sociétés du groupe OEG dans ces mêmes secteurs d'activité (casinos, des salles de machines à sous et des paris en ligne) ;

- **En France et Algérie** : Hippocrate F1 S.à r.l. contrôle via ses filiales le groupe LXO qui produit, commercialise et distribue une large gamme de produits pharmaceutiques soumis à une réglementation stricte ;

---

[2] Pièces n°44 et 45 de MOLITOR
[3] Pièces n°44 et 45 de MOLITOR

- **En Israël, Chypres, USA, Hong Kong, Bulgarie et Royaume-Uni et Luxembourg** : les sociétés contrôlées par NorthPole HoldCo S.à r.l. et connues sous le nom « NSO Group » opèrent dans le domaine de la cyber sécurité.

- **En Israël et USA** : Goatilev LTD et ses filiales, dont Convexum Ltd (ci-après, le groupe « **Goatilev** ») développent des technologies de pointe dans le domaine des drones, y compris des logiciels d'atterrissage de drones principalement vendus aux aéroports et aux projets d'infrastructure et de transport importants.

## B)   *LE DIFFEREND ENTRE LES FONDATEURS ET SES CONSEQUENCES*

### 1.   Genèse du litige

8.   Vers la fin de l'année 2020, sans préjudice quant à la date exacte, un litige est né entre les Fondateurs. Messieurs KOWSKI et KUEKEN ont tenté d'évincer Monsieur PEEL de la direction de la société à responsabilité limitée Novalpina Capital Partners S.à r.l. (« **Topco** »), qui contrôle indirectement Novalpina GP. Cette démarche a donné lieu à une série d'actions judiciaires portées devant les tribunaux Luxembourgeois.

9.   Les Investisseurs du Fonds, qui s'inquiétaient de plus en plus des conséquences que ce différend personnel des Fondateurs pourrait avoir sur le Fonds et ses actifs, sur la valorisation de ces derniers et par voie de conséquence, sur leurs engagements (« *Commitments* ») dans le Fonds, ont alors décidé de procéder au remplacement de Novalpina GP en tant que gérant du Fonds.

10.   A la demande des Investisseurs, le 28 juin 2021, Novalpina GP a convoqué l'assemblée des investisseurs pour le 9 juillet 2021[4] afin de statuer sur sa révocation.

### 2.   Les manœuvres déloyales et frauduleuses de Novalpina GP, ZINI et PILERI précédant la révocation de Novalpina GP

11.   À compter de l'envoi de cette convocation, et sachant que ses jours à la tête du Fonds étaient désormais comptés, Novalpina GP **a, avec le concours de Messieurs ZINI et PILERI, abusé de manière frauduleuse de ses pouvoirs** en tant que Gérant du Fonds et a entrepris plusieurs actions hautement préjudiciables au Fonds dans le but exclusif de favoriser ses intérêts personnels et ceux des personnes contrôlant cette entité (et plus largement ceux du groupe Novalpina), au détriment de ceux du Fonds et de ses investisseurs.

12.   Une de ces manœuvres joue un rôle clé dans le cadre du présent litige :

13.   A la suite du différend mentionné ci-dessus au point 8, les droits de vote de Monsieur PEEL au sein de Topco ont été suspendus. En prenant le contrôle de Topco, Messieurs KOWSKI et LUEKEN, ont pu faire nommer de nouveaux gérants entièrement acquis à leur cause au sein de Novalpina GP.

---

[4]   Pièce n°3 de MOLITOR

14. Le 7 juillet 2021, Messieurs Stefan KOWSKI et Bastian LUEKEN ont ainsi notifié aux trois gérants indépendants de Novalpina GP (à savoir Messieurs Allen FOLEY, Gaëtan DUMONT et Philip ZARB MIZZI) qu'ils n'étaient plus gérants et qu'ils étaient remplacés par Monsieur Stefano PILERI et Monsieur Michael ZINI (ci-après les « **Nouveaux Gérants** »)[5].

15. Après avoir été nommés gérants de Novalpina GP, les Nouveaux Gérants en ont aussitôt profité pour se faire nommer gérants des sociétés NVP 101 S.à r.l., NOAL Luxco North S.à r.l. et NVP 103 S.à r.l., filiales à 100% du Fonds. Les Nouveaux Gérants contrôlaient alors tous les Associés NOAL (et, par conséquent, Master Luxco)[6].

16. Ils ont ensuite verrouillé le conseil de gérance de Master Luxco en révoquant Monsieur Stephen PEEL en tant que gérant de catégorie A et tous les gérants de catégorie B, afin de se faire nommer gérants de catégorie B aux côtés d'un certain Luc REGENT[7]. Ils l'ont fait grâce au contrôle que le Fonds exerçait sur Master Luxco. Tel que rappelé sous le point 7 ci-dessus, le Fonds détenait directement et indirectement **99,15%** de Master Luxco. Aux termes des statuts de Master Luxco en vigueur à l'époque, il suffisait d'une vote à la majorité simple pour nommer ou révoquer les gérants de Master Luxco.

17. Dans une troisième étape, ils ont fait modifier les statuts de Master Luxco par acte notarié le 8 juillet 2021, et ce sans aucun doute sur instruction des Fondateurs Messieurs KOWSKI et LUEKEN, afin d'introduire l'unanimité pour toute décision à prendre par les associés de Master Luxco, y compris la révocation des gérants[8]. A nouveau, les Nouveaux Gérants n'ont pu procéder à cette modification qu'en raison du contrôle exercé par le fonds sur Master Luxco. La modification des statuts nécessitait uniquement un vote à la majorité qualifiée.

18. Il convient de noter que Novalpina GP et ses gérants ont agi de manière délibérée et particulièrement sournoise. Novalpina GP n'a pas pris la peine d'informer le *"Advisory Committee »* ou LPCA conformément à l'article 11.4.5. du LPA alors qu'elle se trouvait manifestement dans une situation de conflit d'intérêts. Alors que la résolution a été adoptée le 8 juillet 2021, elle n'a été publiée le 23 juillet 2021. Enfin, Messieurs PILERI et ZINI n'ont pas adopté une résolution modifiant spécifiquement les règles de majorité au sein de l'assemblée générale. Ils ont procédé à une soi-disant *« une refonte complète des statuts »* sans mettre en évidence les changements opérés, ce qui les rendait difficilement détectables.

19. En agissant ainsi, les Nouveaux Gérants se sont frauduleusement rendus irrévocables.

20. Cette modification des statuts est clairement le résultat d'une fraude, sinon d'un abus dans le chef de Novalpina GP. Le but de Novalpina GP était à la fois de verrouiller la gérance de Master Luxco tout en s'octroyant une minorité de blocage équivalente à un droit de véto au niveau de la Master Luxco de manière à pouvoir peser, même après sa révocation, sur la gestion des sociétés détenues par le Fonds. Novalpina GP a ainsi obtenu un avantage exorbitant par rapport à la participation dérisoire qu'elle détenait à hauteur de 0,85% dans le capital social de Master Luxco. Manifestement, il n'existait aucune raison légitime, de nature commerciale ou autre, justifiant l'introduction du droit de veto par les Nouveaux Gérants. Non seulement, ce droit de véto ne présentait aucun intérêt pour Master Luxco, mais il était en totale contradiction avec les intérêts de Master Luxco.

---

[5]  Pièce n°4 de MOLITOR
[6]  Pièces n°5 à 7 de MOLITOR
[7]  Pièce n°8 de MOLITOR
[8]  Pièce n°9 de MOLITOR



21. Le Fonds et ses filiales, les demanderesses sub 3) à 5) n'avaient, à l'évidence, aucun intérêt à voter en faveur d'une telle modification des statuts de la Master Luxco.

22. En agissant comme ils l'ont fait Novalpina GP et Messieurs ZINI et PILERI ont violé leur obligation d'agir au mieux des intérêts des sociétés qu'ils représentaient et de les gérer en bon père de famille.

23. Novalpina GP, qui ne détient qu'une maigre participation de 0,85% du capital de Master Luxco tente, ainsi « prendre en otage » un Fonds qui a levé plus d'un milliard de dollars.

### 3. La révocation de Novalpina GP et la nomination de BRG NOAL

24. Comme elle l'avait anticipé, Novalpina GP a été révoquée en date du 9 juillet 2021 par les Investisseurs à une écrasante majorité (99,6% en faveur)[9].

25. Le 6 août 2021, conformément au LPA alors en vigueur, BRG NOAL a été nommée Gérant du Fonds par les Investisseurs représentant 96% des droits de vote[10].

26. Cette nomination est effective que le 27 août 2021 après que BRG NOAL eut formellement accepté sa nomination en adhérant au LPA. Toutes les obligations contractuelles à charge du Fonds et/ou du nouveau gérant découlant du LPA ont été satisfaites à cette date tel que cela résulte des courriers adressés le 27 août 2021 par BRG NOAL aux Investisseurs[11] et à Novalpina GP[12].

### 4. L'ordonnance de référé du 4 août 2021

27. Par ordonnance présidentielle du 4 août 2021[13], Monsieur PEEL a obtenu la suspension de la résolution nommant Messieurs PILERI et ZINI en tant que gérants de Novalpina GP et révoquant Messieurs DUMONT, MIZZI et FOLEY. Ces derniers ont donc été rétablis dans leurs fonctions de gérant de Novalpina GP.

### C) LA PRISE DE FONCTIONS DU NOUVEAU GERANT DU FONDS

28. En application du LPA, la révocation du Gérant ouvrait un certain nombre de droits au profit de Novalpina GP et de deux autres sociétés du groupe, les Novalpina SCSp et Group GP.

29. Novalpina GP a obtenu le droit à une « Priority Porfit Share » de la part du Fonds qui lui a été payée le 25 août 2021.

30. La Novalpina SCSp qui avait la qualité de « Carried Interest Partner » aux termes du LPA, est devenue créancière du Fonds au titre du « Removal Entitlement » stipulé à l'article 20.3.3 et suivants du LPA.

---

[9] Pièce n°13 de MOLITOR
[10] Pièce n°17 de MOLITOR
[11] Pièce n°20 de MOLITOR
[12] Pièce n°21 de MOLITOR
[13] Pièce n°15 de MOLITOR

31.   Enfin, Novalpina SCSp, Group GP et Clarendon Trust, une entité contrôlée par Monsieur PEEL (les « **Entités Sponsor** »), pouvaient demander le rachat de leur *« Sponsor Commitment »*.

32.   Dès que BRG NOAL a été pressentie pour reprendre les fonctions de Gérant du Fonds, des négociations se sont nouées entre elle, le groupe Novalpina et les Fondateurs afin d'éviter une transition conflictuelle.

33.   BRG NOAL a accepté en date du 27 août 2021 sa nomination, votée par les Investisseurs le 6 août 2021, en tant que nouveau Gérant du Fonds après s'être notamment assurée du fait que le Fonds serait en mesure de procéder au rachat du *« Sponsor Commitment »* demandé par *« Novalpina »*. Il s'agissait également de la date limite pour sa prise de fonction. A défaut, le Fonds aurait dû être liquidé.

34.   Le *« Sponsor Commitment »* a effectivement acquis le 27 août 2021 par le Fonds.

35.   Le jour même, les associés de Master Luxco, en ce y compris Novalpina GP, ont modifié la composition du conseil de gérance de Master Luxco sur proposition de BRG NOAL.

36.   Cette démarche était nécessaire afin que BRG NOAL puisse assumer sa fonction de Gérant conformément aux termes du LPA, puisque le Gérant était censé, en vertu de l'article 10.3.2. opérer (*« operate »*) et contrôler (*« control »*) les *« Investment Holding Vehicles »*, qui ce incluait Master Luxco et les Sociétés Portfolio.

37.   Corrélativement, à partir du moment où sa révocation est devenue définitive, Novalpina GP n'avait plus aucune légitimité ou droit quelconque au regard du LPA à maintenir ses propres représentants au sein des organes décisionnels de Master Luxco et des Société Portfolio.

38.   BRG NOAL a dû agir avec rapidité car la situation de certains actifs du fonds (notamment le groupe NSO[14]) se dégradait rapidement et elle ne pouvait pas accepter d'être l'otage du conflit entre Fondateurs.

39.   Les discussions se sont poursuivies entre BRG NOAL, le Fonds, les Entités Sponsor et les Fondateurs et elles ont abouti à une série d'accords autour du 30 août 2021.

40.   Tout d'abord, BRG NOAL a accepté d'émettre au profit des sociétés Group GP et Novalpina SCSp une garantie de paiement du prix *« Sponsor Commitment »* (qui a avait été valablement acquis le 27 août 2021) sous forme de gage.

41.   Ensuite, les parties se sont mises d'accord sur les modalités d'évaluation des *« Removal Entitlement »* et *« Sponsor Commitment »*.

42.   Enfin, BRG NOAL a obtenu de chacun des Fondateurs et de chacune des Entités Sponsor des écrits (*« Undertakings »*, ci-après les « **Engagements »**[15]) en vertu desquels ils reconnaissaient BRG NOAL en tant que nouveau Gérant du Fonds avec effet au 27 août 2021 et s'engageaient irrévocablement et inconditionnellement à ne pas affirmer le contraire, ni à inciter ou à provoquer une affirmation contraire, contester ou remettre en question la validité de sa nomination, ni à inciter ou à produire une telle contestation ou remise en question, dans tout forum applicable.

---

[14]   Cf. au sujet de la situation de NSO : pièce n°4 de MOLITOR
[15]   Pièces n°23 à n°28 de MOLITOR



43.    Les signataires des Engagements, dont Group GP, la société-mère de Novalpina GP, ont également pris l'engagement de coopérer avec le Gérant afin de permettre un transfert complet, en bonne ordre et en temps utiles du Fonds et de tous ses actifs (« *to cooperate with and assist the General Partner in completing a full, orderly and timely transfer of the control of the Partnership and all of its assets and any obligation to the General Partner* »). Parmi ses actifs clé figuraient Master Luxco, la principale holding du Fonds grâce à laquelle il détient et contrôle les Sociétés Portfolio.

44.    Même si Novalpina GP n'a pas signé un tel engagement, elle a, par son comportement et les actes qu'elle a posés afin d'assister et permettre à BRG NOAL de prendre ses fonctions de nouveau Gérant du Fonds et le contrôle des filiales du fonds, implicitement, mais nécessairement renoncé à contester les modifications opérées au niveau de la gérance de Master Luxco par BRG NOAL afin de pouvoir exécuter son mandat de Gérant du Fonds.

45.    En effet :

-    Novalpina GP est une filiale à 100% de Group GP qui a signé un Engagement ;

-    Group GP, et par voie de conséquence, Novalpina GP, se trouvent sous le contrôle ultime des Fondateurs ; tel qu'indiqué ci-dessus, Messieurs KOWSKI et KUEKEN ont pu remplacer les gérants de Novalpina GP le 7 juillet 2021 grâce à ce contrôle ;

-    Novalpina GP a participé aux négociations qui ont notamment abouti à la signature des Engagements ;

-    les Engagements sont formulés en termes généraux et emportent non seulement l'obligation pour les signataires de coopérer afin de permettre à BRG NOAL d'exercer son contrôle sur les filiales du Fonds, mais également le faire en sorte que les entités sous leur contrôle collaborent pleinement à la réalisation de cet objectif.

46.    En consolidant la position de BRG NOAL en tant que Gérant du Fonds et la prise de contrôle de Master Luxco à travers la nomination de nouveaux gérants en date du 27 août 2021, les Engagements « *neutralisaient* » l'un des effets les plus préjudiciables du droit de véto, dont BRG NOAL n'avait appris l'existence qu'à la veille de l'acceptation de sa nomination, soit le 26 août 2021, qui était de verrouiller la gestion de Master Luxco au profit de Novalpina GP.

47.    Novalpina GP et l'ensemble des signataires des Engagements ont par la suite activement collaboré afin de permettre à BRG NOAL de reprendre la gestion de Master Luxco et des Sociétés Portfolio.

48.    La reprise en main par BRG NOAL de toutes les sociétés détenues par le Fonds faisait partie intégrante du processus de transition après la révocation de Novalpina GP ce que Monsieur Stefan KOWSKI a lui-même reconnu dans plusieurs courriels adressés aux conseils du LPAC le 1er et le 10 août 2021[16].

---

[16]    Pièce n°18 de MOLITOR

49. Par courriel du 31 août 2021[17], le cabinet MACFARLANES qui agissait notamment pour les Fondateurs mais avec l'accord de Novalpina GP conseillée par LOYENS & LOEFF, a fait circuler une liste des entités appartenant au Fonds dont la gérance devait être remplacée. Parmi ces entités figuraient Master Luxco. Il s'agissait d'une réponse à une demande formulée par DLA Piper le 30 août 2021 demandant confirmation de la démission des dirigeants et employés de Novalpina de tous les conseils d'administration et de gérance des filiales du Fonds. MACFARLANES partait donc du principe, sans être contredit par les destinataires de son courriel, dont les trois Fondateurs, que la composition des organes dirigeants de Master Luxco et des Sociétés Portfolio devaient être modifiée en exécution des Engagements.

50. Le 6 septembre 2021[18], deux des Fondateurs, à savoir Messieurs LUEKEN et PEEL ont démissionné de leurs mandats de gérants de Master Luxco, bien qu'une telle démission n'ait juridiquement pas été requise en raison de leur révocation votée le 27 août 2021.

51. Le 20 octobre 2021 les associés de Master Luxco ont procédé à la reclassification des gérants en classe A et B. Novalpina GP a voté en faveur de cette résolution.

52. Le fait que BRG NOAL était le gérant légitime du Fonds et qu'elle ait pu, à ce titre, valablement procéder au remplacement des anciens gérants de Master Luxco et des Sociétés Portfolio, n'avait jamais été remis en cause avant l'année 2022 que ce soit par Novalpina GP ou par les signataires des Engagements.

53. Ceci alors même qu'un différend était entretemps apparu au sujet de l'évaluation des « Sponsor Commitment ».

### D) LA REMISE EN CAUSE DES RESOLUTIONS ADOPTEES PAR LES ASSOCIES DE MASTER LUXCO EN DATE DU 16 AOUT 2021, 27 AOUT 2021 et 20 OCTOBER 2021

54. Aux termes d'un arrêt du 8 décembre 2021[19], Messieurs KOWSKI et LUEKEN ont obtenu la révocation de l'ordonnance du 4 août 2021. Messieurs PILERI et ZINI ont ainsi été rétablis dans leurs fonctions.

55. Arguant du fait que l'arrêt du 8 décembre 2021 avait pour effet d'anéantir rétroactivement les actes accomplis par Messieurs DUMONT, MIZZI et FOLEY au nom de Novalpina GP entre le 4 août 2021 et le 8 décembre 2021, Novalpina GP a lancé en date du 15 février 2022[20] une assignation au fond contre les parties demanderesses et Master Luxco afin d'obtenir la nullité des résolutions adoptées par les associés de Master Luxco les 16 août 2021, 27 août 2021 et 20 octobre 2021.

56. Novalpina GP prétend qu'elle n'aurait pas été valablement représentée par Messieurs DUMONT et FOLEY, qui ont signé les procès-verbaux des résolutions, lors des assemblées générales ayant adopté ces résolutions.

57. Ensuite, tirant argument de la règle de l'unanimité qu'elle et ses gérants, Messieurs PILERI et ZINI, ont frauduleusement introduit dans les statuts de Master Luxco en date du 7 juillet 2021, elle affirme que les résolutions en question seraient entachées de nullité alors qu'elles n'auraient pas été approuvées à l'unanimité.

---

[17]   Pièce n°50 de MOLITOR
[18]   Pièces n°34 et 35 de MOLITOR
[19]   Pièce n°36 de MOLITOR
[20]   Pièce n°38 de MOLITOR

58.  Par assignation du 23 février 2022[21], Novalpina GP a également lancé une action en référé afin d'obtenir la suspension des effets de ces résolutions.

59.  A travers ces actions, Novalpina GP tente de prendre le contrôle de Master Luxco et des centaines de millions d'euros d'actifs qu'elle contrôle puisque la suspension et/ou l'annulation des résolutions en question auraient pour effet de rétablir Monsieur KOWSKI en tant que gérant de classe A et Messieurs PILERI et ZINI en tant que gérant de classe B.

60.  Si son stratagème aboutit, BRG NOAL sera juridiquement dans l'impossibilité de gérer et de contrôler l'essentiel des actifs du Fonds et c'est précisément là où réside l'intérêt de l'action pour Novalpina GP. Celle-ci cherche d'une part, à faire pression sur le Fonds pour l'obliger à satisfaire les revendications financières du groupe Novalpina et des Fondateurs et (qui sont formellement contestées et qui étaient déjà au cœur de l'assignation en référé du 22 février 2022) d'autre part, à entraver ou à faire échec à l'ensemble des démarches entreprises par BRG NOAL ainsi qu'aux actions lancées par elle pour protéger les intérêts du Fonds et de ses Investisseurs en relation avec les Sociétés Portfolio et le groupe NSO en particulier. Ces actions sont clairement abusives et vexatoires, alors que le groupe Novalpina a déjà lancé une assignation au fonds afin d'obtenir la satisfaction de ses revendications financières (qui sont formellement contestées).

61.  Dans le cadre des deux actions lancées par Novalpina GP au fond et au référé, les demanderesses ont soulevé par voie d'exception la nullité de la résolution du 7 juillet 2021 des associés de Master Luxco notamment sur le fondement de la fraude.

62.  Cette défense permettra certes d'obtenir le rejet de la demande en nullité dirigée contre les résolutions des 16 août 2021, 27 août 2021 et 20 octobre 2021, mais elle laissera subsister la modification statutaire opérée par la résolution du 7 juillet 2021 qui continuera à être une source d'abus pour Novalpina.

63.  Les demanderesses demandent par conséquent et à titre principal la nullité de la résolution du 7 juillet 2021 prise par l'assemblée générale de Master Luxco.

64.  A titre subsidiaire, les demanderesses concluant à ce la modification statutaire du 7 juillet 2021 leur soit déclarée inopposable.


## II.   EN DROIT

65.  A titre liminaire, il est précisé que la présente action n'est dirigée contre Master Luxco que pour des raisons d'ordre purement procédurale puisqu'il est de principe qu'une action en nullité d'une résolution prise par les associés d'une société doit être dirigée contre la société elle-même. Il ne fait toutefois aucun doute que la présente action sert d'intérêt social de Master Luxco qui se recoupe avec celui du Fonds et des demanderesses sub 3) à 5, puisque ces sociétés font partie du même groupe. Par ailleurs, la règle de l'unanimité a pour résultat de la rendre potentiellement ingérable en raison du droit de véto que Novalpina GP s'est octroyé et qui lui permet de bloquer son fonctionnement.

66.  La présente action a principalement pour objet d'obtenir la nullité de la résolution adoptée en date du 8 juillet 2021 en raison de la fraude commise par Novalpina GP au préjudice du Fonds et des parties demanderesses sub 3) à sub 5) (A).

---

[21]   Pièce n°42 de MOLITOR

67.    Subsidiairement, il y a lieu de déclarer la résolution du 8 juillet 2021 inopposable aux parties demanderesses (B).

68.    Les parties demanderesses se réservent expressément le droit de demander l'allocation de dommages et intérêts en raison du préjudice que la modification statutaire du 8 juillet 2021 leur cause (C).

## A)    *PRINCIPALEMENT : QUANT A LA NULLITE*

## 1.    Quant à la qualité et à l'intérêt à agir

69.    En leur qualité d'associés de Master Luxco, les parties demanderesses sub 3) à sub 5) ont incontestablement qualité et intérêt à demander la nullité de la résolution du 8 juillet 2021.

70.    BRG NOAL a également qualité et intérêt à agir en sa qualité de gérant du Fonds, puisque l'adoption de la résolution du 8 juillet 2021 a été prise par Novalpina GP, l'ancien gérant, en violation des termes du *« Limited partnership agreement »* (« **LPA** ») régissant le Fonds.

## 2.    Principalement : la nullité par application de l'adage *« fraus omnia corrumpit »*

71.    Il a été démontré que la modification des statuts de Master Luxco est le résultat d'une fraude commise par Novalpina GP et les Nouveaux Gérants.

72.    Il importe de rappeler que les statuts de Master Luxco ont été modifiés dans la précipitation la plus totale le 8 juillet 2021, c'est-à-dire à la veille de l'assemblée générale du Fonds appelée à statuer sur la révocation de Novalpina GP, sans raison légitime, et dans des circonstances telles que Novalpina GP, les Nouveaux Gérants et Messieurs Stefan KOWSKI et Bastian LUEKEN ne pouvaient ignorer que Novalpina GP allait être révoquée.

73.    Novalpina GP – sous l'impulsion de Messieurs Stefan KOWSKI et Bastian LUEKEN, qui allaient pourtant par la suite signer les Engagements – a ainsi administré une sorte de *« pilule empoisonnée »* à Master Luxco, afin de se mettre en position de pouvoir bloquer toute prise de position au niveau de l'assemblée générale de Master Luxco même après sa future révocation de ses fonctions de Gérant du Fonds, y compris notamment la nomination de nouveaux dirigeants par le futur Gérant du Fonds. Le fait pour le nouveau Gérant du Fonds de nommer de nouveaux gérants au sein de la Master Luxco faisait partie du processus normal et logique de prise de contrôle du Fonds et de ses actifs. Or, en imposant frauduleusement la règle de l'unanimité par le biais de ses hommes de paille, les Nouveaux Gérants Stefano PILERI et Michael ZINI, Novalpina GP s'est constituée de toute pièce un mécanisme de contrôle sur la gestion des actifs du Fonds, en prévision de sa révocation en tant que Gérant du Fonds, et ce dans l'objectif à peine dissimulé d'anéantir et priver de tout effet le droit de révocation des Investisseurs prévu à l'article 20.2 du LPA.

74.    Il est évident que cette modification effectuée par les Nouveaux Gérants, contre lesquels les Défenderesses se réservent d'ores et déjà tous droits, leur a été dictée par Messieurs Stefan KOWSKI et Bastian LUEKEN.

75.     Comment croire en effet à la prétendue *« indépendance »* des Nouveaux Gérants alors que *aussitôt nommés* en date du 7 juillet 2021, leurs premières actions ont été de modifier les statuts de Master Luxco le 8 juillet 2021 et de tenter de faire obstruction lors de l'assemblée générale du Fonds du 9 juillet 2021. Ces actions ont forcément dû être préparées en amont de leur nomination car il est impossible d'imaginer que les Nouveaux Gérants en poste depuis à peine un jour, et qui n'ont pas eu matériellement le temps de se familiariser avec la situation de leur société et celle du Fonds, aient pu entreprendre de telles actions de leur propre chef. Ceux-ci ont forcément agi, et continuent manifestement d'agir, sur instruction des deux Fondateurs qui se trouvaient en litige avec Monsieur Stephen PEEL.

76.     Il est unanimement admis que :

         *« Agissant au nom de la société, les dirigeants ne doivent avoir en vue que les intérêts de celle-ci, lorsqu'ils posent des actes de gestion »*[22].

77.     En sa qualité de Gérant du Fonds, Novalpina GP était censée agir au mieux de ses intérêts du Fonds. Il en est de même des Nouveaux Gérants, qui ont été nommés par Novalpina GP aux fonctions de gérants des sociétés NVP 101 S.à r.l., NOAL Luxco North S.à r.l. et NVP 103 S.à r.l., filiales à détenues 100% par le Fonds.

78.     Les intérêts du Fonds et de ses filiales à 100% sont parfaitement alignés, puisque c'est par le biais des filiales que le Fonds est censé exercer son contrôle sur Master Luxco et c'est via Master Luxco, que le Fonds est censé contrôler les Sociétés Portfolio.

79.     La modification des statuts pour imposer l'unanimité pour toute décision d'assemblée générale ne profitait pas aux demanderesses et était manifestement contraire à leurs intérêts. L'introduction de cette règle leur était hautement préjudiciable car du fait de la présence de Novalpina GP dans le capital social de Master Luxco, la règle de l'unanimité revenait à lui accorder, dans les faits, un droit de véto.

80.     En faisant adopter une résolution contraire à l'intérêt social du Fonds et des sociétés NVP 101 S.à r.l., NOAL North S.à r.l. et NVP 103 S.à r.l., dans leur intérêt personnel exclusif, Novalpina GP et les Nouveaux Gérants, agissant sur instruction de Messieurs KOWSKI et LUEKEN, ont commis une fraude qui entache la validité de la résolution adoptée par l'assemblée générale de Master Luxco le 8 juillet 2021.

81.     La notion de fraude au sens large telle que reflétée dans la maxime *« fraus omnia corrumpit »* est synonyme de ruse, tromperie ou de manœuvre déloyale[23].

82.     D'après la jurisprudence :

         *« Pour être constitutif de fraude, l'acte déloyal doit être accompli dans l'intention de causer un dommage ou d'obtenir un gain. Il ne suffit pas que l'acte déloyal soit volontaire et cause de la sorte un dommage. La fraude implique la volonté malicieuse, la tromperie intentionnelle, la déloyauté dans le but de nuire ou de réclamer un gain »*[24].

---

[22]     Alain STEICHEN, *« Précis de droit des sociétés »*, *précité*,  n°252, p.204

[23]     Lux. 23 décembre 2015, JTL, n°44, 2016, p.57

[24]     Cour 23 novembre 2020, n° de rôle CAL-2019-00653

83. Il saute aux yeux que Novalpina GP et les Nouveaux Gérants ont agi de mauvaise foi et de manière déloyale afin de permettre à Novalpina GP de s'arroger le droit de faire obstruction aux décisions que le Fonds aurait pu prendre au niveau de la Master Luxco et des Sociétés Portfolio.

84. A l'évidence l'instauration de la règle de l'unanimité dans les statuts de Master Luxco était contraire aux intérêts du Fonds et des sociétés NVP 101 S.à r.l., NOAL Luxco North S.à r.l. et NVP 103 S.à r.l. puisqu'elle les prive du contrôle qu'elles pouvaient exercer sur Master Luxco en leur qualité d'associés majoritaires. Plus généralement, la règle de l'unanimité visait à créer un mécanisme légal destiné à priver le Gérant du Fonds nommé et choisi par les Investisseurs de tout pouvoir effectif de contrôle et de gestion des actifs du Fonds, portant ainsi une atteinte intolérable aux droits contractuels dont les Investisseurs devaient légitimement être en mesure de se prévaloir en vertu du LPA.

85. L'instauration de la règle de l'unanimité ne présentait strictement aucun intérêt pour les Associés NOAL. Elle ne profitait qu'à Novalpina GP en lui donnant de fait un pouvoir exorbitant par rapport à sa participation minimale au capital social de la Master Luxco.

86. L'introduction de la « *pilule empoisonnée* » a constitué une violation manifeste du devoir de loyauté et autres obligations envers les Investisseurs du Fonds, par les Nouveaux Gérants et ceux qui en sont à l'origine, à savoir Messieurs KOWSKI et LUEKEN.

87. Le comportement de Novalpina GP et des Nouveaux Gérants constitue non seulement une fraude, mais il serait même susceptible d'être pénalement sanctionné au titre de l'article 1500-11 de la Loi de 1915 qui punit d'un an à cinq ans et d'une amende de 500 euros à 25 000 euros ou d'une de ces peines seulement, les dirigeants de société, de droit ou de fait, qui de mauvaise foi « *auront fait des pouvoirs qu'ils possédaient ou des voix dont ils disposaient, en cette qualité, un usage qu'ils savaient contraire aux intérêts de la société à des fins personnelles ou pour favoriser une autre société ou entreprise dans laquelle ils étaient intéressés directement et indirectement* ».

88. Novalpina GP a favorisé ses propres intérêts au détriment de ceux du Fonds. Les Nouveaux Gérants ont agi à la fois par intérêt personnel (celui-ci pouvant être d'ordre professionnel ou simplement moral[25]) et afin de favoriser les sociétés dans lesquelles ils étaient intéressés.

89. Le 21 avril 2022[26], le Fonds, BRG NOAL, Master Luxco et les Associés NOAL, représentés par Maître André LUTGEN, ont ainsi déposé une plainte pénale avec constitution de partie civile auprès du Juge d'instruction du Tribunal d'arrondissement de et à Luxembourg, notamment contre Novalpina GP, sur le fondement de l'article 1500-11 de la Loi de 1915.

90. Sur le plan civil, toutefois, la fraude doit entraîner la nullité de la résolution du 8 juillet 2021.

91. Dans ce contexte, il convient de noter qu'il existe des cas de nullité de résolutions d'assemblée générale en dehors de ceux mentionnés à l'article 100-22 de la Loi de 1915. L'article 100-22 de la Loi n'est limitatif qu'en ce qu'il vise les cas de nullité tirés de la Loi de 1915.



---

[25] Alain STEICHEN, « *Précis de droit des sociétés* », précité, n°418, p.329
[26] Pièce n°49 de MOLITOR

92.   D'après la jurisprudence:

&laquo; Le principe &laquo; fraus omnia corrumpit &raquo; a un champ d'application vaste, dès lors que la fraude ne peut créer un droit et que l'acte qui en est entaché n'est pas opposable aux tiers ni aux parties. La fraude constitue une exception à toutes les règles de droit et a une fonction essentiellement correctrice. Lorsque, par l'effet d'une règle de droit (ou d'une institution juridique, d'un acte juridique, ou encore de l'acquisition de la personnalité morale), l'auteur d'un comportement frauduleux est susceptible d'en retirer un avantage, l'application de l'adage peut réduire cet effet à néant, en tout cas, dans la mesure nécessaire pour faire échec à l'objectif prohibé. La neutralisation des effets d'un tel comportement se traduit par l'inopposabilité, éventuellement soulevée sous la forme d'une &laquo; exception de fraude &raquo;, de l'acte ou de la règle à la victime, que celle-ci soit un tiers ou une partie à un contrat. La sanction pourra finalement imposer que l'acte soit complètement écarté, ce qui aboutira à sa nullité &raquo;[27].

93.   La doctrine considère que &laquo; cette maxime étant d'application générale, elle permet d'obtenir la nullité de toute décision frauduleuse adoptée en assemblée générale &raquo;[28].

94.   Il s'agit de la sanction la plus adaptée au domaine du droit des sociétés.

95.   En effet :

&laquo;En droit commun, la mise en oeuvre de l'adage fraus omnia corrumpit aboutit seulement à ce que l'acte frauduleux ne puisse avoir d'effets à l'égard de la victime, au regard de laquelle l'acte sera donc inopposable. Par contre, l'acte frauduleux restera valable vis-à-vis des autres personnes comme des fraudeurs mêmes. La transposition de cette analyse sur le plan du droit des sociétés présente des limites certaines, en ce qu'elle ne permettrait pas toujours de rétablir la victime dans ses droits. Il suffit de songer à une augmentation de capital frauduleuse : la déclarer simplement inopposable à la victime n'empêchera pas l'associé d'être dilué, si les droits sociaux nouvellement émis ne sont pas annulés également. De ce fait, la nullité d'un acte frauduleux, afin d'être pleinement efficace, devra souvent produire ses effets erga omnes et donc aboutir à la nullité de l'acte &raquo;[29].

96.   Prenant appui sur une décision du Tribunal d'arrondissement du 27 juin 2018[30], un auteur confirme que :

&laquo; (…) d'autres causes de nullité que celles prévues par la Loi [sont] possibles, à savoir &laquo; les disposition qui régissent la nullité des contrats, qu'il s'agisse des règles générales (consentement, capacité, dol,…) ou spécifique au contrat de société (interdiction des clauses léonines,…) &raquo;. Dans le cas d'espèce il s'agissait d'une action du curateur en nullité basée sur l'article 445 du Code de commerce. Le Tribunal a déclaré que la prescription visée à l'article 1400-6 de la Loi ne s'appliquait pas à de telles actions. Une action en nullité pour abus de majorité semble donc toujours ouverte, **au même titre d'ailleurs qu'une action en nullité pour fraude[31] &raquo;.**[32]

---

[27]   Lux. 19 janvier 2021, n° de rôle TAL-2018-02173, TAL2019-03019

[28]   Alain STEICHEN, &laquo; Précis de droit des sociétés &raquo;, précité,  n°254, p.202, note de bas de page n°1 ; cf. également en ce sens André ELVINGER, op.cit., p.130 qui considère que le principe &laquo; fraus omnia corrumpit &raquo; relève de l'ordre public et des bonnes mœurs

[29]   Alain STEICHEN, op.cit. ; loc. cit.

[30]   Lux, 27 juin 2018, Pas. 239, p.107

[31]   Nous soulignons

[32]   Mathieu LAURENT, &laquo; Abus de majorité et de minorité en droit des sociétés et jurisprudences récentes &raquo;, ACE 2020/9, p.7.

97. Le même auteur précise :

*« Sur base de la jurisprudence actuelle, ce délai de prescription raccourci ne s'appliquera cependant pas aux actions en nullité introduites sur une autre base que la Loi »*[33].

98. Au regard de ce qui précède, les parties demanderesses sub 1) à 5) sont donc fondées à demander la nullité de la résolution adoptée en date du 8 juillet 2021 par les associés de Master Luxco sur le fondement de la fraude.

**2.     Subsidiairement : La nullité en tant que réparation en nature**

99. Les agissements de Novalpina GP et de Messieurs ZINI et PILERI engagent incontestablement leur responsabilité contractuelle (2.1.), sinon délictuelle (2.2.) à l'égard des demanderesses sub 1) à 5).

100. La réparation la plus adéquate en l'espèce consiste en une réparation en nature qui doit prendre la forme d'une annulation de la résolution litigieuse (2.3.).

*2.1.     La responsabilité contractuelle des défendeurs*

101. L'adoption frauduleuse de la résolution du 8 juillet 2021 engage incontestablement la responsabilité contractuelle de Novalpina GP vis-à-vis du Fonds en sa qualité d'ancien gérant.

102. Il convient de rappeler qu'en sa qualité de gérant et donc de mandataire social, Novalpina GP était tenue d'agit dans l'intérêt du Fonds.

103. Aux termes du *« Limited partnership agreement »* (*«* **LPA** *»*) régissant le Fonds, le Gérant était en certes en droit d'opérer (*« operate »*) et contrôler (*« control »*) les *« Investment Holding Vehicles »*, qui ce incluait Master Luxco et les demanderesses sub 2) à 4), mais il devait le faire dans l'intérêt du Fonds qui se confond en l'espèce avec celui de ses filiales.

104. Novalpina GP a abusé des pouvoirs qu'elle détenait en sa qualité de gérant du Fonds afin de privilégier ses intérêts personnels.

105. Par ailleurs, le LPA imposaient un certain nombre d'obligations spéfiques au Gérant. Ainsi, Nouvalpina GP aurait dû d'informer l' *« Advorisy   committee »* ou LPAC conformément à l'article 11.4.5. alors qu'elle se trouvait manifestement dans une situation de conflit d'intérêts. Novalpina GP a donc violé les dispositions du LPA.

106. Novalpina GP est donc contractuellement responsable vis-à-vis du Fonds.

107. Messieurs ZINI et PILERI engagent quant à eux, leur responsabilité contractuelle vis-à-vis des demanderesses sub 3) à sub 5) en leur qualité d'ancien gérants.

108. En effet, ils ont abusé de leur fonction de gérants des sociétés NVP 101 S.à r.l., NOAL Luxco North S.à r.l. et NVP 103 S.à r.l., en votant en leur nom en faveur de la résolution du 8 juillet 2021 et ceci dans leur intérêt personnel et celui du groupe Novalpina GP qui les emploie.

---

[33]     Mathieu LAURENT, *op.cit.*, p.9

### 2.2.   La responsabilité délictuelle des défendeurs

109.  A titre subsidiaire, pour le cas où la responsabilité contractuelle de Novalpina GP ne serait pas retenue à l'égard du Fonds et celle de Messieurs ZINI et PILERI à l'égard des demanderesses sub 3) à sub 5), il y aurait lieu de considérer que leurs agissements sont constitutifs d'une faute délictuelle au sens de articles 1382 et 1384 du Code civil. Il a notamment été jugé que la fraude engageait la responsabilité civile de son auteur[34].

110.  Leur responsabilité délictuelle est engagée en tout état de cause à l'égard de BRG NOAL et de Master Luxco.

### 2.3.   La nullité comme mode de réparation en nature

111.  Il est admis que la nullité peut constituer un mode de réparation en nature d'une faute engageant la responsabilité de son auteur[35].

112.  Sur base des développements qui précèdent sous les points 2.1. et 2.2., les parties demanderesses sub 1) à 5) concluent à l'annulation de la résolution du 8 juillet 2021 en tant que réparation en nature de leur dommage, sans préjudice quant à leur droit de demander des dommages et intérêts pour le dommage distinct que la nullité ne suffira pas à réparer.

### B)   SUBSIDIAIREMENT : QUANT A L'INOPPOSABILITE

113.  Si le Tribunal ne devait pas faire droit à la demande de nullité des parties demanderesses, il y aurait lieu alors de déclarer la résolution du 8 juillet 2021 **inopposable** aux parties demanderesses ainsi qu'à Master Luxco pour les raisons suivantes :

114.  Tout d'abord, il convient de rappeler que l'adage « *fraus omnia corrumpit* » a une fonction correctrice « *qui prescrit au juge de faire régner l'équité avec ces correctifs essentiel que si le juge « ne peut donner au juste plus que la loi ne lui donne, il se reconnaît d'enlever au coupable les avantages que la situation juridique que celui-ci avait cru acquérir (… ) »[36]*.

115.  Son application peut dès lors « *prendre des formes extrêmement diverses (inopposabilité ou nullité d'un acte, dommages et intérêts), afin que l'auteur de la fraude ne puisse tirer avantage de sa fraude »[37]*.

116.  La fraude peut ainsi non seulement conduire à la nullité, mais également à l'inopposabilité de celui-ci[38].

---

[34]   Cour 22 janvier 2020, n° de rôle CAL-2017-00004
[35]   Cf. p.ex. Olivier CAPRASSE et Roman AYDOGDU, *«Les conflits entre actionnaires »*, Larcier 2010, n°441 et ss
[36]   Cour 22 janvier 2020, n° de rôle CAL-2017-00004
[37]   Cour 22 janvier 2020, précité
[38]   Cour 22 janvier 2020, précité : Lux. 19 janvier 2021, précité

117. Ensuite, la jurisprudence admet que l'application de l'adage *« n'écarte pas pour autant celle des règles du droit commun lorsque les conditions de celui-ci sont réunion, ce qui se traduit, **soit ici aussi par l'inopposabilité de l'acte, cette fois-si à titre de réparation en nature fondée sur l'article 1382 du Code civil**[39] »*[40].

118. Si le Tribunal ne devait pas faire droit à la demande de nullité à titre de réparation en nature conformément à ce qui est demandé sous le point A), 2) ci-dessus il y aurait alors lieu de déclarer la résolution inopposable aux demanderesses pour les motifs développés sous le point a) 2) qui s'appliquent *mutandis mutatis* à l'inopposabilité.

### C) DOMMAGES ET INTERETS

119. Les parties demanderesses se réservent expressément le droit de réclamer des dommages et intérêts, y compris par la voie d'une action séparée, pour le cas où le Tribunal ne ferait pas à leur demande de nullité ou de manière générale pour tout préjudice que la nullité ne suffirait pas à réparer.

### D) TOUS AUTRES DROITS RESERVES CONTRE LES FONDATEURS

120. Les demanderesses demandent également acte de ce qu'elles se réservent expressément tous droits contre Messieurs KOWSKI et LUEKEN qui doivent être considérés comme gérants de fait de Novalpina GP et sur instruction desquels, la société Novalpina GP et Messieurs ZINI et PILERI ont certainement agi.

121. Les parties demanderesses se réservent notamment le droit de demander des dommages et intérêts à leur encontre, sans préjudice de tous autres droits et actions, soit par assignation en intervention forcée ou par une action séparée.

### A CES CAUSES



voir déclarer la présente demande recevable en la forme;

au fond la dire justifiée;

### I. Principalement

constater que la résolution du 8 juillet 2021 est le résultat d'une fraude ;

partant, en application du principe *« fraus omnia corrumpit »*, ordonner l'annulation de la résolution adoptée en date du 8 juillet 2021 par l'assemblée générale la société à responsabilité limitée NOAL Luxco S.à r.l. ;

---

[39]   Nous soulignons
[40]   Cour 22 janvier 2020, précité

subsidiairement, déclarer en application du même principe « *fraus omnia corrumpit* » que la résolution du 8 juillet 2021 est inopposable aux parties demanderesses et que la partie Novalpina GP ne pourra pas se prévaloir du principe d'unanimité vis-à-vis des parties demanderesses pour empêcher l'adoption de futures résolutions par l'assemblée générale des associés de la société à responsabilité limitée NOAL Luxco S.àr.l. ;

## II.    Subsidiairement

dire, sur base des motifs énoncés dans la présente assignation, que Novalpina Capital Partners I GP S.àr.l. a commis une faute contractuelle sinon délictuelle vis-à-vis de la société en commandite spéciale NOAL SCSp et qu'elle engage sa responsabilité contractuelle sinon délictuelle à son égard ;

dire que Messieurs Stefano ZINI et Michael PILERI ont commis une faute contractuelle sinon délictuelle à l'égard des sociétés à responsabilité limitée NOAL Luxco North S.à r.l. et NVP 103 S.à r.l. et qu'ils engagent leur responsabilité contractuelle sinon délictuelle à leur égard ;

dire que les trois défendeurs ont commis une faute délictuelle vis-à-vis de BRG NOAL qui engage leur responsabilité délictuelle à leur égard ;

ordonner à titre de réparation en nature l'annulation de la résolution adoptée en date du 8 juillet 2021 par l'assemblée générale la société à responsabilité limitée NOAL Luxco S.à r.l. ;

déclarer à titre subsidiaire, à titre de réparation en nature, que la résolution du 8 juillet 2021 est inopposable aux parties demanderesses et que la partie Novalpina GP ne pourra pas se prévaloir du principe d'unanimité vis-à-vis des parties demanderesses pour empêcher l'adoption de futures résolutions par l'assemblée générale des associés de la société à responsabilité limitée NOAL Luxco S.à r.l. ;

## III.   EN TOUT ETAT DE CAUSE

déclarer le jugement commun à la société responsabilité limitée NOAL Luxco S.à r.l. ;

donner acte aux demanderesses qu'elles se réservent expressément le droit de réclamer des dommages et intérêts contre les parties défenderesses, y compris dans le cadre d'une action séparée ;

donner acte aux demanderesses qu'elles se réservent expressément tous droits contre Messieurs KOWSKI et LUEKEN qui doivent être considérés comme gérants de faits de Novalpina GP et sur instruction desquels, la société Novalpina GP et Messieurs ZINI et PILERI ont certainement agi ;

donner encore acte aux parties demanderesses qu'elles se réservent notamment le droit de demander des dommages et intérêts à leur encontre, sans préjudice de tous autres droits et actions, soit par assignation en intervention forcée ou par une action séparée ;

condamner les défendeurs, à payer, solidairement, sinon *in solidum* sinon chacun pour sa part, aux Demanderesses une indemnité de procédure de **15.000 euros (quinze mille euros)** au titre de l'article 240 du Nouveau Code de Procédure Civile, pour toutes les sommes que les Demanderesses doivent débourser, non comprises dans les dépens, tels les frais d'avocat et qu'il serait inéquitable de laisser à leur seule charge, compte tenu de l'attitude des assignées, ayant conduit au litige, la partie Novalpina Capital Partners I GP S.à r.l s'entendre condamner solidairement, sinon *in solidum*, sinon chacune pour sa part à tous les frais et dépens de l'instance avec distraction au profit de l'avocat à la Cour concluant affirmant en avoir fait l'avance ;

ordonner l'exécution provisoire du jugement à intervenir nonobstant toute voie de recours, sans caution, sur minute et avant enregistrement ;

voir réserver aux demanderesses le droit de produire, outre les pièces énumérées dans le corps de la présente assignation, toutes autres pièces en temps et lieu utiles et suivant qu'il appartiendra;

voir réserver aux demanderesses autres droits, dus, moyens et actions;

## A L'APPUI DE LA PRESENTE DEMANDE, SONT INVOQUEES LES PIECES SUIVANTES:

1. Articles de presse concernant le litige entre les Fondateurs ;

2. Courrier des Investisseurs à Novalpina GP du 25 juin 2021 ;

3. *"Convening Notice"* du 28 juin 2018 ;

4. Courriel du 8 juillet 2021 de Monsieur Gaëtan DUMONT à Proskauer ;

5. Extrait du Recueil Electronique des Sociétés et Associations du 8 juillet 2021 relatif au changements de gérants au sein de Novalpina Capital Partners I Luxco North S.à r.l. ;

6. Extrait du Recueil Electronique des Sociétés et Associations du 9 juillet 2021 relatif au changements de gérants au sein de NVP 101 S.à r.l. ;

7. Extrait du Recueil Electronique des Sociétés et Associations du 9 juillet 2021 relatif au changements de gérants au sein de NVP 103 S.à r.l. ;

8. Extrait du Recueil Electronique des Sociétés et Associations du 8 juillet 2021 relatif au changements de gérants au sein de Master Luxco ;

9. Modification des statuts de Novalpina Partners I Luxco S.à r.l. du 8 juillet 2021 ;

10. Statuts de Novalpina Partners I Luxco S.à r.l. au 3 novembre 2020 ;

11. Procès-verbal de l'assemblée des Investisseurs du 9 juillet 2021 ;

12. Ordonnance présidentielle du 20 juillet 2021 ;

13. Procès-verbal de constat de l'huissier Guy ENGEL du 21 juillet 2021 sur les résultats du vote de l'assemblée générale des Investisseurs du Fonds du 9 juillet 2021;

14. Courriers adressés le 23 juillet 2021 par Novalpina GP aux Investisseurs et au Fonds ;

**15.** Ordonnance du 4 août 2021 rendue dans le cadre du litige entre Fondateurs,

**16.** Courriel de Proskauer du 6 août 2021 aux conseils de Novalpina GP ;

**17.** Courrier du 9 août 2021 de Novalpina GP aux Investisseurs confirmant les résolutions prises le 6 août 2021 par les Investisseurs ;

**18.** Echange de courriels du 29 juillet 2021 au 11 août 2021 entre Monsieur Stefan KOWSKI, Monsieur Stephan PEEL et Proskauer au sujet du processus de transition entre l'ancien et le nouveau Gérant ;

**19.** Extrait du Recueil Electronique des Sociétés et Associations du 13 août 2021 relatif à Novalpina GP ;

**20.** Courrier du 27 août 2021 adressé par BRG NOAL aux Investisseurs confirmant que les conditions du LPA pour le remplacement de Novalpina GP et la nomination de BRG NOAL étaient remplies ;

**21.** Courrier du 27 août 2021 adressé par BRG NOAL notamment à Novalpina GP confirmant que les conditions du LPA pour le remplacement de Novalpina GP et la nomination de BRG NOAL étaient remplies ;

**22.** « Pledge agreement » entre le Fonds, le GP et autres du 28 août 2021 ;

**23.** Engagement de Bastian LUEKEN du 28 août 2021 ;

**24.** Engagement de Stephen PEEL du 28 août 2021 ;

**25.** Engagement de Stefan KOWSKI du 28 août 2021 ;

**26.** Engagement de Group GP du 28 août 2021 ;

**27.** Engagement de Novalpina SCSp du 28 août 2021 ;

**28.** Engagement de Clerendon Trust du 31 août 2021 ;

**29.** Courriel de White & Case à Proskauer du 30 août 2021 ;

**30.** Confirmation de Monsieur Stephen PEEL ;

**31.** Confirmations de Monsieur Stefan KOWSKI et de Monsieur Bastian LUEKEN ;

**32.** Confirmations de Novalpina GP, Novalpina SCSp et Group GP ;

**33.** Confirmation de BRG NOAL ;

**34.** Démission de Monsieur Stephen PEEL de Master Luxco du 6 septembre 2021 ;

**35.** Démission de Monsieur Bastian LUEKEN de Master Luxco du 6 septembre 2021 ;

**36.** Arrêt du 8 décembre 2021 rendu dans le cadre du litige entre Fondateurs ;

**37.** Assignation au fond du 15 février 2022 de Novalpina GP contre notamment Master Luxco, le Fonds et des Sociétés Portfolio ;

38. Courrier du 15 février 2021 de Brucher, Thieltgen & Partners à Monsieur Finbarr O'CONNOR;

39. Courrier du 16 février 2022 de Brucher, Thieltgen & Partners au Ad Hoc Bondholder Group de la société ODYSSEY EUROPE HOLDCO SARL;

40. Courrier du 16 février 2022 de Brucher, Thieltgen & Partners à NSO Group;

41. Courrier du 16 février 2022 de Proskauer à Burcher, Thieltgen & Partners,

42. Assignation du 23 février 2022 en référé de Novalpina GP ;

43. Assignation au fond du 25 février 2022 de Novalpina GP, Novalpina SCSp et Group GP, contre BRG NOAL, le Fonds et autres entités, dont des membres du LPAC;

44. Organigramme du Fonds avant le changement de gérant ;

45. Organigramme du Fonds après le changement de gérant ;

46. Revue de presse relative à la situation de NSO ;

47. Courriels échangées entre conseils entre le 18 et le 28 août 2021 dans le cadre des négociations au sujet du changement du LPA, de l'émission de *« Promissory Notes »,* du Gage et des Principes d'Evaluation ;

48. Courriel de Monsieur Stefano PILERI du 26 août 2021 ;

49. Plainte avec constitution de partie civile déposée en date du 21 avril 2022 contre Messieurs PILERI ; ZINI et autres sur le fondement de l'article 1500-11 de la Loi de 1915 ;

50. Courriel de MACFARLANES du 31 août 2021 ;

51. *Second Amended and Restated Limited Partnership Agreement* applicable au moment de la résolution du 8 juillet 2021;

52. Ordonnance de référé du 17 juin 2022 dans le rôle TAL-2022-01572

Dont acte, sous toutes réserves

| COUT | |
|---|---|
| DROIT | 144,00 |
| COP | 90,00 |
| VOY | 40,00 |
| ADR | 28,80 |
| H.T. | 302,80 |
| TVA | 51,48 |
| TOTAL | 354,28 |
| ENR | 12,00 |
| TIM | 118,00 |
| P&T | 20,00 |
| TTC | 504,28 |





# English Translation

**Guy ENGEL**
**Court Bailiff**
**B.P. 2781**
**L-1027 LUXEMBOURG**

# <u>TERMS OF DELIVERY OF THE DEED</u>

Date of delivery: The year two thousand [hw:] *twenty-two, on the twenty-second of September* .................................................................................................................

This deed was delivered by the undersigned bailiff under the conditions indicated in the section marked with a cross and according to the collected declarations, for the recipient at

○ their home ○ their residence ○ their head office

○ their elected domicile at ................................................................

.........................................................................................

.........................................................................................

⊗  [hw:] *[Harpas [illegible] SARL].*................................................

...... *41, Bld Royal*

...... *L-2449 Luxembourg [illegible]*

.........................................................................................

as described below.
Verifications made as to the accuracy of the address with the

| | Recipient of the deed |
|---|---|
| | [hw:] *Michael ZÍNÍ*
*41, Bld Royal*
*L-2449 Luxembourg* |

○  civil registry          ○   trade register          ○  central law department          ○ ....................................................

---

**A) SERVICE TO NOBODY**

○    An individual to the recipient themselves       ○    Legal entity to Surname/First name(s) .............................................    ○  At the elected domicile, to the principal themselves
who has been declared to be authorized to receive (a) copy(ies)

thus declared, who has accepted the deed

---

**B) SERVICE AT HOME**

B.I.) Found            Surname/Given Name(s) ...........................................................................

                       Capacity ...................................................................................

                       Address...................................................................................

thus declared, who agreed to receive a copy and to give a receipt, upon which the undersigned bailiff gave him a copy of the deed in a sealed envelope bearing only the indication of the surname, given name(s), capacity, and address of the recipient and the stamp of the bailiff affixed to the closure of the envelope; in addition, a copy of the deed, as well as a calling card, mentioning the indications relating to the person to whom copy of the deed was delivered - all in a sealed envelope bearing only the indication of the surname, given name(s), capacity, and address of the recipient and the stamp of the bailiff affixed to the closure of the envelope - were left on the premises, and this given that the service under A) could not be made notwithstanding the diligence carried out and after diligence was carried out and checks were made on the accuracy of the address

|  |
|---|
|  |

Signature of the person met at the premises

B.II.) It was not possible to find anyone who was able to receive the copy and give receipt or who agreed to receive the copy and give receipt, given
⊗    that there was no one        [hw:] *[illegible]*          ○    that the person present refused to declare their surname, given name(s), capacity, and address
○    that the person present had not reached the age of 15
○    that the person present was(were) the applicant(s)          ○    that the person present refused to receive the copy
                                                                ○    that the person present refused to give receipt

and after diligence was carried out and checks were made on the accuracy of the address
the undersigned bailiff left on the premises a copy of the deed, as well as a notice of passage informing about the terms of service of the deed, all in a closed envelope bearing only the indication of the surname, given name(s), capacity, and address of the recipient and the stamp of the bailiff affixed to the closure of the deed, and he has also sent by simple letter a copy of the deed and the notice of passage to the recipient within the period provided for by the Law.

ALL PARAGRAPHS NOT MARKED WITH A CROSS SHALL BE DEEMED NOT WRITTEN.

NOTE: ...................................................................................................     Signed: Guy ENGEL [signature]

# <u>NOTICE OF PASSAGE</u>

It is brought to the attention of the recipient of this notice that the bailiff appeared on the date and at the address listed above to serve them with a deed. The recipient himself could not be found,

○ the copy of the aforementioned deed has been returned in a closed envelope to .......................................................................................................
mentioned above in sub B.I.; a second envelope containing a copy of the deed and this notice has been left on the premises.

○ the person present refused       □ to accept       □ to declare their surname, given name(s), capacity and address       □ to give receipt
⊗ no one having the capacity to receive the copy that could not be found on the premises,
the copy of the deed and this notice were left on the premises; a second copy of the deed and a copy of this notice were sent by simple letter to the recipient.

Date [hw:] *[09/22/22]* ............

                                                               Signed: Guy ENGEL [signature]

[blank page in source]

**SUMMONS**

**Before the District Court of and in Luxembourg for commercial
matters according to civil procedure**


In the year two thousand twenty-two, on the twenty-second of September.

At the request of


1.    **the limited liability company BRG NOAL GP S.à r.l.,** established and having its registered office at L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, registered in the Trade and Companies Register of Luxembourg under number B258060, represented by its management board currently in office, otherwise, by any other body authorized to legally represent it;

2.    **the special limited partnership NOAL SCSp** (formerly Novalpina Capital Partners I SCSp), established and having its registered office at L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen registered in the Trade and Companies Register of Luxembourg under number B.217.345, represented by its manager, the company BRG NOAL GP S.à r.l., mentioned above;

3.    **the limited liability company NVP 101 S.à r.l.,** established and having its registered office at L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, registered in the Trade and Companies Register of Luxembourg under number B.248.060, represented by its management board currently in office, otherwise, by any other body authorized to legally represent it;

4.    **3. the limited liability company N VP 103 S.à r.l.,** established and having its registered office at L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, registered in the Trade and Companies Register of Luxembourg under number B.244.933, represented by its management board currently in office, otherwise, by any other body authorized to legally represent it;

5.    **the limited liability company NOAL LuxCo North S.à r.l.** (formerly Novalpina Capital Partners I LuxCo North S.à r.l.), established and having its registered office at L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, registered in the Trade and Companies Register of Luxembourg under number B.233.835, represented by its management board currently in office, otherwise, by any other body authorized to legally represent it;

electing domicile at the study of the limited liability company **MOLITOR Avocats à la Cour SARL,** established and having its registered office in L-2763 LUXEMBOURG, 8, rue Sainte-Zithe, registered on list V of the Luxembourg Bar Association Board, registered in the Trade and Companies Register of Luxembourg under number B 211810, which is constituted and who are so ordered to act for the plaintiffs, represented in the context of these proceedings by **Maître Paulo LOPES DA SILVA,** attorney at law, residing at the same address,

I, the undersigned, **Guy ENGEL,** bailiff, residing at L-2263 LUXEMBOURG, 2, rue Guido Oppenheim, registered with the District Court of and in Luxembourg,

<u>gave a summons to:</u>

1. **the limited liability company Novalpina Capital Partners I GP S.à r.l.,** established and having its registered office at L-1148 LUXEMBOURG, 16, rue Jean l'Aveugle, registered in the Trade and Companies Register of Luxembourg under number B 217341, represented by its management board currently in office, otherwise, by any other body authorized to legally represent it;

2. **Mr. Stefano PILERI,** corporate director, residing at L-8023 STRASSEN, 4, rue du Genêt;

3. **Mr. Michael ZINI,** corporate director, residing professionally at the limited liability company **Harper & Pearsons SARL,** established and having its registered office at L-2449 LUXEMBOURG, 41, Boulevard Royal;

4. **the limited liability company NOAL Luxco S.à r.l.** (formerly Novalpina Capital Partners I Luxco S.à r.l.), established and having its registered office at L-2411 LUXEMBOURG, 15, Boulevard F.W. Raiffeisen, registered in the Trade and Companies Register of Luxembourg under number B.219.319, represented by its management board currently in office;

---

**to appear by ministry of law before the Court within the time limit established by law, which is 15 days, at 9:00 a.m. before the District Court of and in Luxembourg for civil matters, in accordance with the commercial procedure pursuant to Article 547 of the Code of Civil Procedure, Judicial City, Building CO, L-2080 Luxembourg;**

---

**with the declaration, in accordance with Articles 79 and 80 of the New Code of Civil Procedure, that, if service is made to person and the summoned parties fail to appear, the judgment to be rendered will be deemed to be made after having heard all the parties and will not be subject to opposition, for:**

---

## I.    FACTS AND BACKGROUND

### A)    *PRESENTATION OF THE NOAL GROUP*

#### 1.    The Fund

1. The special limited partnership NOAL SCSp (hereinafter "**The Fund"),** originally referred to as Novalpina Capital Partners I SCSp, was incorporated in 2017 by three founding members, namely Mr. Stephen PEEL, Mr. Stefan KOWSKI, and Mr. Bastian LUEKEN (hereinafter the "**Founders**") following the conclusion of the *Limited Partnership Agreement* ("**LPA**").[1]

2. The limited partners of the Fund are institutional investors or private individuals (hereinafter the "**Investors**") who have jointly entered into commitments *("Commitments*") in the Fund in the amount of approximately one billion euros. The Investors include state pension funds that have invested on behalf of employees, including in the United States (by way of example, Oregon State Treasury has invested approximately €200 million in the Fund) and in the United Kingdom.

---

[1]    MOLITOR Exhibit no. 51

3.    Among its Investors, the Fund also included the companies Novalpina Capital Partners I GP Group S.à r.l. ("**GP Group")** and Novalpina Capital Partners I FP SCSp ("**Novalpina SCSp"),** two companies controlled by the Founders. These companies have in the meantime exited the Fund. This point will be further developed below.

4.    The general partner and the manager ("General Partner" and hereinafter "**Manager**") of the Fund, who must at all times act in the interest of the Fund, is currently the company BRG NOAL GP S.à r.l. (hereinafter "**BRG NOAL**") and was, at the time of the incorporation of the Fund, the limited liability company Novalpina Capital Partners I GP S.à r.l. (hereinafter "**Novalpina GP**"), a wholly owned subsidiary of the GP Group.

## 2.    Master Luxco and its partners

5.    The limited liability company NOAL Luxco S.à r.l. (hereinafter "**Master Luxco**") is the *soparfi* (*société a participations financières* [company with financial holdings]) established by the Fund in order to control the vast majority of the Group's Portfolio Companies[2].

6.    Master Luxco includes the following partners:

-    Novalpina GP (holding approximately **0.85%** of the shares in Master Luxco);

-    the Fund (<u>directly</u> holding approximately **0.77%** of the Master Luxco shares);

-    the Fund (<u>indirectly</u> holding approximately **98.38%,** through three entities held by the Fund, namely, the limited liability company NVP 101 S.à r.l. (holding approximately 51.36% of the shares of Master Luxco), the limited liability company NOAL LuxCo North S.à r.l. (holding approximately 6.37% of the shares of Master Luxco), and the limited liability company NVP 103 S.à r.l. (holding approximately 40.65% of the shares of Master Luxco).

## 3.    The Portfolio Companies

7.    The Fund directly and indirectly holds through Master Luxco a constellation of companies[3], which themselves control operating companies (together the "**Portfolio Companies**") in several countries:

•    **In Romania and Malta:** OEGH Holdings S.à r.l. and Maximums Topco S.à r.l. operate through the companies "*Maxbet"* in the casino, slot room, and online betting sector;

•    **In Estonia, Latvia, Lithuania, Slovakia, Croatia, Malta, and Italy:** the companies controlled by the Fund through Odyssey Europe Holdco S.à r.l. operate through the companies of the OEG group in these same sectors (casinos, slot rooms, and online betting);

•    **In France and Algeria:** Hippocrate F1 S.à r.l. controls, through its subsidiaries, the LXO group that produces, markets, and distributes a wide range of pharmaceutical products subject to strict regulations;

---

2    MOLITOR Exhibits No. 44 and 45
3    MOLITOR Exhibits No. 44 and 45

[stamp:] REVENUE STAMP GRAND DUCHY OF LUXEMBOURG €2

- **In Israel, Cyprus, USA, Hong Kong, Bulgaria, the UK, and Luxembourg:** the companies controlled by NorthPole HoldCo S.à r.l. and known as the "NSO Group" operate in the field of cyber security.

- **In Israel and the USA:** Goatilev LTD and its subsidiaries, including Convexum Ltd (hereinafter, the "**Goatilev**" group) develop cutting-edge drone technologies, including drone landing software primarily sold to airports and major infrastructure and transportation projects.

## B) *THE DIFFERENCE BETWEEN THE FOUNDERS AND ITS CONSEQUENCES*

### 1. Origin of the Dispute

8.  Around the end of 2020, without prejudice to the exact date, a dispute arose between the Founders. Mr. KOWSKI and Mr. KUEKEN attempted to remove Mr. PEEL from the management of the limited liability company Novalpina Capital Partners S.à r.l. ("**Topco**"), which indirectly controls Novalpina GP. This situation gave rise to a series of legal actions brought before the Luxembourg courts.

9.  The Fund's Investors, who were increasingly concerned about the consequences that this personal dispute of the Founders could have on the Fund and its assets, on the valuation of the latter, and, consequently, on their commitments ("*Commitments*") in the Fund, then decided to replace Novalpina GP as manager of the Fund.

10. At the request of the Investors, on June 28, 2021, Novalpina GP convened the investor meeting for July 9, 2021,[4] in order to rule on its dismissal.

### 2. Novalpina GP, ZINI, and PILERI's unfair and fraudulent maneuvers prior to Novalpina GP's revocation

11. As of the sending of this notice, and knowing that its days at the head of the Fund were now numbered, Novalpina GP **has, with the help of Mr. ZINI and Mr. PILERI, fraudulently abused its powers** as Manager of the Fund and has taken several highly detrimental actions against the Fund for the exclusive purpose of promoting its personal interests and those of the persons controlling this entity (and, more broadly, those of the Novalpina Group), to the detriment of those of the Fund and its investors.

12. One of these maneuvers plays a key role in this dispute:

13. Following the dispute mentioned above in point 8, Mr. PEEL's voting rights within Topco were suspended. By taking control of Topco, Mr. KOWSKI and Mr. LUEKEN were able to appoint new managers fully acquired for their cause within Novalpina GP.

---

[4]        MOLITOR Exhibit No. 3

14. On July 7, 2021, Mr. Stefan KOWSKI and Mr. Bastian LUEKEN thus notified the three independent managers of Novalpina GP (namely Mr. Allen FOLEY, Mr. Gaëtan DUMONT, and Mr. Philip ZARB MIZZI) that they were no longer managers and that they were replaced by Mr. Stefano PILERI and Mr. Michael ZINI (hereinafter the "**New Managers**")[5].

15. After being appointed managers of Novalpina GP, the New Managers immediately took the opportunity to be appointed managers of the companies NVP 101 S.à r.l., NOAL Luxco North S.à r.l., and NVP 103 S.à r.l., wholly-owned subsidiaries of the Fund. The New Managers then controlled all NOAL Partners (and, therefore, Master Luxco).[6]

16. They then locked the management board of Master Luxco by dismissing Mr. Stephen PEEL as category A manager and all category B managers, in order to be appointed category B managers alongside a certain Luc REGENT[7]. They did this through the Fund's control over Master Luxco. As recalled under point 7 above, the Fund directly and indirectly held **99.15%** of Master Luxco. Under the terms of the corporate bylaws of Master Luxco in force at the time, it was sufficient for a simple majority vote to appoint or revoke the Master Luxco managers.

17. In a third stage, they had Master Luxco's corporate bylaws amended by notarized deed on July 8, 2021, and this, without a doubt, on the instructions of the Founders, Mr. KOWSKI and Mr. LUEKEN, in order to introduce unanimity for any decision to be taken by the shareholders of Master Luxco, including the dismissal of the managers[8]. Again, the New Managers were only able to make this amendment due to the control exercised by the fund over Master Luxco. The amendment of the corporate bylaws only required a qualified majority vote.

18. It should be noted that Novalpina GP and its managers acted in a deliberate and particularly devious manner. Novalpina GP did not bother to inform the "*Advisory Committee*" or LPCA in accordance with Article 11.4.5. of the LPA, when it was clearly in a situation of conflict of interest. While the resolution was adopted on July 8, 2021, it was not published until July 23, 2021. Finally, Mr. PILERI and Mr. ZINI did not adopt a resolution specifically amending the majority rules within the general meeting. They proceeded with a so-called "*complete redesign of the corporate bylaws*" without highlighting the changes made, which made them difficult to detect.

19. By doing so, the New Managers fraudulently became irrevocable.

20. This amendment to the corporate bylaws is clearly the result of fraud, if not abuse, on the part of Novalpina GP. The goal of Novalpina GP was both to lock down the management of Master Luxco while granting itself a blocking minority equivalent to a veto right at the Master Luxco level in such a way as to be able to weigh, even after its revocation, on the management of the companies held by the Fund. Novalpina GP thus obtained an exorbitant advantage compared to the derisory shareholding it held in the amount of 0.85% in the share capital of Master Luxco. Clearly, there was no legitimate reason, commercial or otherwise, justifying the introduction of the right of veto by the New Managers. Not only was this right of veto of no interest in Master Luxco, it was in total contradiction with the interests of Master Luxco.

---

5       MOLITOR Exhibit No. 4
6       MOLITOR Exhibits No. 5 to 7
7       MOLITOR Exhibit No. 8
8       MOLITOR Exhibit No. 9

21.  The Fund and its subsidiaries, the plaintiffs sub 3) to 5) obviously had no interest in voting in favor of such a modification of the corporate bylaws of Master Luxco.

22.  By acting as they did, Novalpina GP and Mr. ZINI and Mr. PILERI violated their obligation to act in the best interests of the companies they represented and to manage them in good faith.

23.  Novalpina GP, which holds only a small stake of 0.85% in Master Luxco's capital, thus "*took hostage*" a Fund that has raised more than one billion dollars.


**3.  The revocation of Novalpina GP and the appointment of BRG NOAL**


24.  As it had anticipated, Novalpina GP was revoked on July 9, 2021, by the Investors at an overwhelming majority (99.6% in favor).[9]

25.  On August 6, 2021, in accordance with the LPA then in force, BRG NOAL was appointed Manager of the Fund by the Investors representing 96% of the voting rights[10].

26.  This appointment is effective only until August 27, 2021 after BRG NOAL had formally accepted its appointment by joining the LPA. All contractual obligations incumbent on the Fund and/or the new manager arising from the LPA were fulfilled on this date as a result of the letters sent on August 27, 2021, by BRG NOAL to the Investors[11] and to Novalpina GP[12].

**4.  The interim order of August 4, 2021**


27.  By presidential order of August 4, 2021[13], Mr. PEEL obtained the suspension of the resolution appointing Mr. PILERI and Mr. ZINI as managers of Novalpina GP and dismissing Mr. DUMONT, Mr. MIZZI, and Mr. FOLEY. They have therefore been restored to their duties as manager of Novalpina GP.


*C)   THE START OF THE NEW MANAGER OF THE FUND*


28.  Pursuant to the LPA, the Manager's revocation opened a number of rights for the benefit of Novalpina GP and two other group companies, Novalpina SCSp and GP Group.

29.  Novalpina GP obtained the right to a "*Priority Porfit [sic: Profit] Share*" from the Fund paid to it on August 25, 2021.

30.  The Novalpina SCSp, which had the capacity of "*Carried Interest Partner*" under the LPA, became a creditor of the Fund under the "*Removal Entitlement*" provided for in Article 20.3.3 et seq. of the LPA.

---

31.   Finally, Novalpina SCSp, GP Group, and Clarendon Trust, an entity controlled by Mr. PEEL (the "**Sponsor Entities**"), could request the redemption of their "*Sponsor Commitment.*"

32.   As soon as BRG NOAL was approached to resume the role of Manager of the Fund, negotiations were established between it, the Novalpina Group, and the Founders to avoid a conflicting transition.

33.   On August 27, 2021, BRG NOAL accepted its appointment, voted by the Investors on August 6, 2021, as a new Manager of the Fund after ensuring in particular that the Fund would be able to proceed with the redemption of the "*Sponsor Commitment*" requested by "*Novalpina.*" This was also the deadline for its start date. Failing this, the Fund should have been liquidated.

34.   The "*Sponsor Commitment*" was actually acquired on August 27, 2021, by the Fund.

35.   On the same day, the Master Luxco partners, including Novalpina GP, modified the composition of Master Luxco's board of directors on the proposal of BRG NOAL.

36.   This was necessary in order for BRG NOAL to be able to assume its function as Manager in accordance with the terms of the LPA, because the Manager was supposed, under Article 10.3.2. to operate *("operate")* and control ("*control")* the "*Investment Holding Vehicles,*" which included Master Luxco and the Portfolio Companies.

37.   Alternatively, from the time its revocation became final, Novalpina GP no longer had any standing or right whatsoever with regard to the LPA to maintain its own representatives within the decision-making bodies of Master Luxco and the Portfolio Company.

38.   BRG NOAL had to act quickly because the situation of certain assets of the fund (including the NSO group[14]) deteriorated rapidly and it could not agree to be the hostage of the conflict between the Founders.

39.   Discussions continued between BRG NOAL, the Fund, the Sponsor Entities, and the Founders, which resulted in a series of agreements around August 30, 2021.

40.   First, BRG NOAL agreed to issue, for the benefit of the GP Group and Novalpina SCSp, a guarantee of payment of the "*Sponsor Commitment*" price (which had been validly acquired on August 27, 2021) in the form of a pledge.

41.   Then, the parties agreed on the terms of evaluation of the "*Removal Entitlement*" and "*Sponsor Commitment.*"

42.   Finally, BRG NOAL obtained undertakings from each of the Founders and each of the Sponsor Entities *("Commitments,"* hereinafter the "**Commitments**")[15] under which they recognized BRG NOAL as the new Manager of the Fund with effect as of August 27, 2021, and irrevocably and unconditionally agreed not to assert the contrary, nor to induce or cause a statement to the contrary, contest or question the validity of its appointment, nor to induce or produce such a dispute or challenge, in any applicable forum.

---

14    See, regarding the NSO situation, MOLITOR exhibit no. 4.
15    MOLITOR Exhibits No. 23 to 28

43. The signatories to the Commitments, including the GP Group, the parent company of Novalpina GP, have also made the commitment to cooperate with the Manager in order to enable a complete, good, and timely transfer of the Fund and all of its assets ("*to cooperate with and assist the General Partner in completing a full, orderly and timely transfer of the control of the Partnership and all of its assets and any obligation to the General Partner"*). Among its key assets was Master Luxco, the main holding company of the Fund, through which it owns and controls the Portfolio Companies.

44. Even if Novalpina GP has not signed such an undertaking, it has, by its behavior and the acts it has taken in order to assist and enable BRG NOAL to take on its duties as new Manager of the Fund and control of the subsidiaries of the Fund, implicitly, but necessarily, waived the right to challenge the changes made in the management of Master Luxco by BRG NOAL in order to be able to carry out its mandate as Manager of the Fund.

45. Indeed:

- Novalpina GP is a wholly-owned subsidiary of the GP Group which has signed a Commitment;

- GP Group, and consequently, Novalpina GP, are under the ultimate control of the Founders; as indicated above, Mr. KOWSKI and Mr. KUEKEN were able to replace the managers of Novalpina GP on July 7, 2021, thanks to this control;

- Novalpina GP participated in the negotiations, which in particular resulted in the signing of the Commitments;

- the Commitments are formulated in general terms and not only entail the obligation for the signatories to cooperate in order to allow BRG NOAL to exercise its control over the subsidiaries of the Fund, but also to ensure that the entities under their control fully collaborate in the achievement of this objective.

46. By consolidating BRG NOAL's position as Manager of the Fund and the takeover of Master Luxco through the appointment of new managers on August 27, 2021, the Commitments "*neutralized"* one of the most detrimental effects of the right of veto, the existence of which BRG NOAL had only learned on the eve of the acceptance of its appointment, i.e. on August 26, 2021, which was to lock down the management of Master Luxco in favor of Novalpina GP.

47. Novalpina GP and all the signatories of the Commitments subsequently actively collaborated in order to allow BRG NOAL to take over the management of Master Luxco and the Portfolio Companies.

48. BRG NOAL's takeover of all the companies owned by the Fund was an integral part of the transition process after the revocation of Novalpina GP, which Mr. Stefan KOWSKI himself acknowledged in several emails sent to the LPAC counsels on August 1 and 10, 2021[16].

---

[16]    MOLITOR Exhibit No. 18

49.    In an email dated August 31, 2021[17], the firm MACFARLANES, which acted in particular for the Founders, but with the agreement of Novalpina GP advised by LOYENS & LOEFF, circulated a list of entities belonging to the Fund whose management should be replaced. These entities included Master Luxco. This was a response to a request made by DLA Piper on August 30, 2021, requesting confirmation of the resignation of Novalpina's officers and employees from all boards of directors and of management of the Fund's subsidiaries. MACFARLANES therefore assumed, without being contradicted by the recipients of its email, including the three Founders, that the composition of the governing bodies of Master Luxco and the Portfolio Companies had to be modified in execution of the Commitments.

50.    On September 6, 2021[18], two of the Founders, namely Mr. LUEKEN and Mr. PEEL resigned from their mandates as managers of Master Luxco, although such resignation was not legally required due to their revocation voted on August 27, 2021.

51.    On October 20, 2021, Master Luxco's partners reclassified the managers to class A and B. Novalpina GP voted in favor of this resolution.

52.    The fact that BRG NOAL was the legitimate manager of the Fund and that it could, in this respect, validly replace the former managers of Master Luxco and the Portfolio Companies, had never been called into question before 2022, either by Novalpina GP or by the signatories of the Commitments.

53.    This, even though a dispute had arisen in the meantime regarding the evaluation of *the "Sponsor Commitment."*

**D)    THE QUESTIONING OF THE RESOLUTIONS ADOPTED BY THE PARTNERS OF MASTER LUXCO DATED AUGUST 16, 2021, AUGUST 27, 2021, and OCTOBER 20, 2021**

54.    Under the terms of a judgment of December 8, 2021[19], Mr. KOWSKI and Mr. LUEKEN obtained the revocation of the order of August 4, 2021. MR. PILERI and Mr. ZINI were thus restored to their duties.

55.    Arguing that the judgment of December 8, 2021, had the effect of retroactively destroying the acts performed by Mr. DUMONT, Mr. MIZZI, and Mr. FOLEY on behalf of Novalpina GP between August 4, 2021, and December 8, 2021, Novalpina GP launched on February 15, 2022,[20] a substantive summons against the plaintiffs and Master Luxco in order to obtain the nullity of the resolutions adopted by the partners of Master Luxco on August 16, 2021, August 27, 2021, and October 20, 2021.

56.    Novalpina GP claims that it was not validly represented by Mr. DUMONT and Mr. FOLEY, who signed the minutes of the resolutions, at the general meetings having adopted these resolutions.

57.    Then, arguing that it and its managers, Mr. PILERI and Mr. ZINI, fraudulently introduced in the corporate bylaws of Master Luxco dated July 7, 2021, it asserts that the resolutions in question would be null and void when they would not have been unanimously approved.

---

[17]        MOLITOR Exhibit No. 50
[18]        MOLITOR Exhibits No. 34 and 35
[19]        MOLITOR Exhibit No. 36
[20]        MOLITOR Exhibit No. 38

58. By summons of February 23, 2022[21], Novalpina GP also initiated an interim action in order to obtain the suspension of the effects of these resolutions.

59. Through these actions, Novalpina GP attempts to take control of Master Luxco and hundreds of millions of euros of assets it controls since the suspension and/or cancellation of the resolutions in question would have the effect of restoring Mr. KOWSKI as a class A manager and Mr. PILERI and ZINI as a class B manager.

60. If its scheme succeeds, BRG NOAL will be legally unable to manage and control most of the Fund's assets, and this is precisely where the interest of the share resides for Novalpina GP. This seeks, on the one hand, to pressure the Fund to satisfy the financial claims of the Novalpina Group and the Founders and (which are formally disputed and which were already at the heart of the summons for interim proceedings of February 22, 2022), on the other hand, to hinder or defeat all the steps taken by BRG NOAL, as well as the actions initiated by it, to protect the interests of the Fund and its Investors in relation to the Portfolio Companies and the NSO group in particular. These actions are clearly abusive and vexatious, while the Novalpina Group has already launched a summons for the fund in order to obtain the satisfaction of its financial claims (which are formally contested).

61. As part of the two actions initiated by Novalpina GP on the merits and in the interim, the plaintiffs raised, by way of exception, the nullity of the resolution of July 7, 2021, of the partners of Master Luxco, in particular on the basis of fraud.

62. This defense will certainly allow the rejection of the request for nullity directed against the resolutions of August 16, 2021, August 27, 2021, and October 20, 2021, but it will leave the statutory modification made by the resolution of July 7, 2021, which will continue to be a source of abuse for Novalpina.

63. The plaintiffs, therefore, and in principal, request the nullity of the resolution of July 7, 2021, taken by the general meeting of Master Luxco.

64. In the alternative, the plaintiffs conclude that the statutory amendment of July 7, 2021, is declared unenforceable against them.

## II.    IN LAW

65. As a preliminary point, it is specified that this action is directed against Master Luxco only for purely procedural reasons since it is in principle that an action for nullity of a resolution taken by the partners of a company must be directed against the company itself. However, there is no doubt that this action serves the corporate interest of Master Luxco, which overlaps with that of the Fund and the plaintiffs under 3) to 5, since these companies are part of the same group. Furthermore, the unanimity rule has the result of making it potentially unmanageable due to the right of veto that Novalpina GP has granted itself and which allows it to block its operation.

66. The main purpose of this action is to obtain the nullity of the resolution adopted on July 8, 2021, due to fraud committed by Novalpina GP to the detriment of the Fund and the plaintiffs sub 3) to sub 5) (A).

---

[21]       MOLITOR Exhibit No. 42

67. Alternatively, the resolution of July 8, 2021, should be declared unenforceable against the plaintiffs (B).

68. The plaintiffs expressly reserve the right to claim the allocation of damages due to the prejudice that the statutory amendment of July 8, 2021, causes them (C).

## A)   MAINLY: REGARDING NULLITY

### 1.   As to standing and interest to act

69. In their capacity as shareholders of Master Luxco, the plaintiffs sub 3) to sub 5) have undoubtedly the standing and interest to request the nullity of the resolution of July 8, 2021.

70. BRG NOAL also has the standing and interest to act in its capacity as manager of the Fund, since the adoption of the resolution of July 8, 2021, was taken by Novalpina GP, the former manager, in violation of the terms of the "*Limited partnership agreement*" ("**LPA**") governing the Fund.

### 2.   Mainly: nullity by application of the adage "fraus omnia corrumpit"

71. It has been demonstrated that the amendment of the corporate bylaws of Master Luxco is the result of fraud committed by Novalpina GP and the New Managers.

72. It is important to remember that the corporate bylaws of Master Luxco were amended in full rush on July 8, 2021, i.e. on the eve of the general meeting of the Fund called to decide on the dismissal of Novalpina GP, without legitimate reason, and in circumstances such as Novalpina GP, the New Managers, and Mr. Stefan KOWSKI and Mr. Bastian LUEKEN could not be unaware that Novalpina GP would be revoked.

73. Novalpina GP - under the direction of Mr. Stefan KOWSKI and Mr. Bastian LUEKEN, who would subsequently sign the Commitments - thus administered a kind of "*poison pill*" to Master Luxco, in order to put itself in a position to be able to block any position taken at the level of the general meeting of Master Luxco, even after the future revocation of its duties as Manager of the Fund, including in particular the appointment of new managers by the future Fund Manager. The fact that the new Fund Manager appoints new managers within Master Luxco was part of the normal and logical process of taking over the Fund and its assets. However, by fraudulently imposing the rule of unanimity through its strawmen, the New Managers Stefano PILERI and Michael ZINI, Novalpina GP has constituted a control mechanism on the management of the assets of the Fund, in anticipation of its revocation as Manager of the Fund, with the barely concealed objective of destroying and depriving of any effect the right of revocation of the Investors provided for in Article 20.2 of the LPA.

74. It is obvious that this amendment made by the New Managers, against which the Defendants already reserve all rights, was dictated to them by Mr. Stefan KOWSKI and Mr. Bastian LUEKEN.

75.    How can we believe in the alleged "*independence*" of the New Managers, when, after being _immediately appointed_ on July 7, 2021, their first actions were to amend the corporate bylaws of Master Luxco on July 8, 2021, and to attempt to obstruct the general meeting of the Fund on July 9, 2021. These actions necessarily had to be prepared before their appointment, because it is impossible to imagine that the New Managers who have been in office for just one day, and who did not materially have time to become familiar with the situation of their company and that of the Fund, could have undertaken such actions on their own. They have necessarily acted, and clearly continue to act, on the instruction of the two Founders who were in dispute with Mr. Stephen PEEL.

76.    It is unanimously accepted that:

   "*Acting on behalf of the company, the directors must only have in view the interests of the company when they take management actions.*"[22]

77.    As Fund Manager, Novalpina GP was expected to act in the best interests of the Fund. The same applies to the New Managers, who have been appointed by Novalpina GP to the functions of managers of the companies NVP 101 S.à r.l., NOAL Luxco North S.à r.l., and NVP 103 S.à r.l., subsidiaries wholly owned by the Fund.

78.    The interests of the Fund and its wholly-owned subsidiaries are perfectly aligned, since it is through the subsidiaries that the Fund is supposed to exercise control over Master Luxco, and it is through Master Luxco that the Fund is supposed to control the Portfolio Companies.

79.    The amendment of the corporate bylaws to impose unanimity for any decision of a general meeting did not benefit the plaintiffs and was clearly contrary to their interests. The introduction of this rule was highly detrimental to them because, due to the presence of Novalpina GP in the share capital of Master Luxco, the unanimous rule was to grant it, in fact, a right of veto.

80.    By having a resolution adopted contrary to the corporate interest of the Fund and the companies NVP 101 S.à r.l., NOAL North S.à r.l., and NVP 103 S.à r.l., in their exclusive personal interest, Novalpina GP and the New Managers, acting on the instructions of Mr. KOWSKI and Mr. LUEKEN, committed fraud that undermines the validity of the resolution adopted by the General Meeting of Master Luxco on July 8, 2021.

81.    The notion of fraud in the broad sense as reflected in the maxim "*fraus omnia corrumpit*" is synonymous with trickery, deceit, or unfair practice[23].

82.    According to case law:

   "*To constitute fraud, the unfair act must be carried out with the intention of causing damage or obtaining a gain. It is not sufficient for the unfair act to be voluntary and cause such damage. Fraud involves malicious will, intentional deception, disloyalty with the aim of harming or claiming a gain.*"[24]

---

[22]    Alain STEICHEN, "*Précis de droit des sociétés*" [Summary of Company Law] cited above, no. 252, p. 204
[23]    Lux. December 23, 2015, JTL, No. 44, 2016, p. 57
[24]    Court November 23, 2020, role no. CAL-2019-00653

83. It is clear that Novalpina GP and the New Managers acted in bad faith and unfairly in order to allow Novalpina GP to arrogate the right to hinder decisions that the Fund could have made at the Master Luxco and the Portfolio Companies level.

84. Clearly, the implementation of the unanimous rule in the corporate bylaws of Master Luxco was contrary to the interests of the Fund and the companies NVP 101 S.à r.l., NOAL Luxco North S.à r.l., and NVP 103 S.à r.l. since it deprives them of the control that they could exercise over Master Luxco in their capacity as majority shareholders. More generally, the unanimous rule aimed at creating a legal mechanism intended to deprive the Fund Manager appointed and chosen by the Investors of any effective power of control and management of the assets of the Fund, thereby infringing intolerable contractual rights which the Investors had to legitimately be able to invoke under the LPA.

85. The establishment of the unanimity rule was strictly of no interest to the NOAL Partners. It only benefited Novalpina GP by in fact giving it exorbitant power in relation to its minimum share capital participation in Master Luxco.

86. The introduction of the "*poison pill*" constituted a clear violation of the duty of loyalty and other obligations towards the Fund Investors, by the New Managers and those who caused it, namely Mr. KOWSKI and Mr. LUEKEN.

87. The conduct of Novalpina GP and the New Managers is not only fraud, but it would even be likely to be criminally sanctioned under Article 1500-11 of the Law of 1915, which punishes from one year to five years and a fine of 500 euros to 25,000 euros, or one of these penalties alone, the company leaders, de jure or de facto, who in bad faith "*will have made use of the powers they had or the votes they held, as such, which they knew to be contrary to the interests of the company for personal gain or to favor another company or business in which they were directly interested and indirectly.*"

88. Novalpina GP favored its own interests to the detriment of those of the Fund. The New Managers acted both by personal interest (which may be professional or simply moral[25]) and in order to favor the companies in which they were interested.

89. On April 21, 2022[26], the Fund, BRG NOAL, Master Luxco, and the NOAL Partners, represented by Maître André LUTGEN, thus filed a criminal complaint with the investigating judge of the District Court of and in Luxembourg, in particular against Novalpina GP, on the basis of Article 1500-11 of the Law of 1915.

90. Civilly, however, fraud must lead to the nullity of the resolution of July 8, 2021.

91. In this context, it should be noted that there are cases of nullity of general meeting resolutions outside of those mentioned in Article 100-22 of the Law of 1915. Article 100-22 of the Law is limited only in that it refers to cases of nullity drawn from the Law of 1915.

---

25    Alain STEICHEN, "*Précis de droit des sociétés*" cited above, no. 418, p. 329
26    MOLITOR Exhibit No. 49

92.   According to case law:

*"The principle 'fraus omnia corrumpit' has a broad scope of application, since fraud cannot create a right and the act which is vitiated by it is not opposable to third parties or to the parties. Fraud is an exception to all rules of law and has an essentially corrective function. When, by the effect of a rule of law (or a legal institution, a legal act, or the acquisition of legal personality), the perpetrator of a fraudulent conduct is likely to derive an advantage, the application of the adage may reduce this effect to nothing, in any case, to the extent necessary to defeat the prohibited objective. The neutralization of the effects of such behavior results in the unenforceability, possibly raised in the form of a "fraud exception," of the act or rule against the victim, whether the victim is a third party or a party to a contract. The sanction may ultimately require that the deed be completely dismissed, which will result in its nullity[27]."*

93.   The doctrine considers that "*this maxim being of general application, it makes it possible to obtain the nullity of any fraudulent decision adopted in the general meeting.*"[28]

94.   This is the most appropriate sanction in the field of corporate law.

95.   Indeed:

*"In common law, the implementation of the adage fraus omnia corrumpit only results in that the fraudulent act cannot have any effect with regard to the victim, with regard to which the act will therefore be unenforceable. However, the fraudulent act will remain valid vis-à-vis other persons as the fraudsters themselves. The transposition of this analysis in terms of corporate law has certain limits, in that it would not always allow the rights of the victim to be restored. Just think about a fraudulent capital increase: simply declaring it unenforceable against the victim will not prevent the partner from being diluted if the newly issued corporate rights are not also cancelled. Therefore, the nullity of a fraudulent act, in order to be fully effective, must often produce erga omnes effects and, therefore, lead to the nullity of the act[29]."*

96.   Based on a decision of the District Court of June 27, 2018[30], an author confirms that:

*"(...) causes of nullity other than those provided for by the Law [are] possible, namely 'the provisions that govern the nullity of contracts, whether they are general rules (consent, capacity, fraud, etc.) or specific to the company contract (prohibition of leonine clauses, etc.)." In this case, it was an action by the curator for nullity based on article 445 of the Commercial Code. The Court stated that the statute of limitations referred to in Article 1400-6 of the Law did not apply to such actions. An action for nullity for abuse of majority therefore always seems to be open, **in the same way as an action for nullity for fraud.**[31]"[32]*

---

[27]   Lux. January 19, 2021, role no. TAL-2018-02173, TAL2019-03019

[28]   Alain STEICHEN, "*Précis de droit des sociétés,*" cited above, no. 254, p. 202, footnote no. 1; see also in this sense André ELVINGER, *op. cit.,* p. 130, who considers that the principle "*fraus omnia corrumpit"* falls under public order and good morals

[29]   Alain STEICHEN, *op. cit.; loc. cit.*

[30]   Lux, 27 June 2018, Pas. 239, p. 107

[31]   We highlight

[32]   Mathieu LAURENT, "*Abus de majorité et de minorité en droit des sociétés et jurisprudences récentes*" [Abuse of majority and minority in corporate law and recent case law], ACE 2020/9, p. 7.

97. The same author specifies:

   *"Based on current case law, this shortened limitation period will not, however, apply to nullity actions brought on a basis other than the Law."[33]*

98. In view of the above, the plaintiffs sub 1) to 5) are therefore justified in requesting the nullity of the resolution adopted on July 8, 2021, by the partners of Master Luxco on the basis of fraud.

## 2. Alternatively: Nullity as in-kind relief

99. The actions of Novalpina GP and Mr. ZINI and Mr. PILERI undoubtedly incur their contractual liability (2.1.), if not tortious liability (2.2.) with regard to the plaintiffs sub 1) to 5).

100. The most adequate repair in this case consists of a repair in kind, which must take the form of the nullity of the disputed resolution (2.3.).

### 2.1.   The contractual liability of the defendants

101. The fraudulent adoption of the resolution of July 8, 2021, undoubtedly incurs Novalpina GP's contractual liability vis-à-vis the Fund in its capacity as former manager.

102. It should be recalled that, in its capacity as manager and, therefore, as corporate officer, Novalpina GP was required to act in the interest of the Fund.

103. Under the terms of the "*Limited partnership agreement*" ("**LPA**") governing the Fund, the Manager was certainly entitled to operate *("operate")* and control ("*control*") the "*Investment Holding Vehicles,"* which included Master Luxco and the plaintiffs sub 2) to 4), but it had to do so in the interest of the Fund, which is confused in this case with that of its subsidiaries.

104. Novalpina GP abused the powers it held in its capacity as Fund Manager in order to prioritize its personal interests.

105. Furthermore, the LPA imposed a number of specific obligations on the Manager. Thus, Novalpina GP should have informed the "*Advisory committee"* or LPAC in accordance with Article 11.4.5. while it was clearly in a situation of conflict of interest. Novalpina GP therefore violated the provisions of the LPA.

106. Novalpina GP is therefore contractually liable vis-à-vis the Fund.

107. Mr. ZINI and Mr. PILERI, meanwhile, engaged their contractual liability vis-à-vis the plaintiffs sub 3) to sub 5) in their capacity as former managers.

108. In fact, they abused their position as managers of the companies NVP 101 S.à r.l., NOAL Luxco North S.à r.l., and NVP 103 S.à r.l., by voting on their behalf in favor of the resolution of July 8, 2021, and this in their personal interest and that of the Novalpina GP group that employs them.

---

[33]   Mathieu LAURENT, *op. cit.,* p. 9

### 2.2.  Tort liability of the Defendants

109.  In the alternative, in the event that Novalpina GP's contractual liability is not retained with regard to the Fund and that of Mr. ZINI and Mr. PILERI with regard to the plaintiffs sub 3) to sub 5), it would be appropriate to consider that their actions constitute tort within the meaning of Articles 1382 and 1384 of the Civil Code. In particular, it was found that the fraud involved the civil liability of its perpetrator[34].

110.  in any event, their tortious liability is incurred with regard to BRG NOAL and Master Luxco.

### 2.3.  Nullity as a form of in-kind compensation

111.  It is accepted that nullity may constitute a method of compensation in kind for a fault involving the liability of its author[35].

112.  On the basis of the above developments under points 2.1. and 2.2., the plaintiffs sub 1) to 5) conclude that the resolution of July 8, 2021, should be annulled as compensation in kind for their damage, without prejudice to their right to claim damages for the separate damage that the nullity will not suffice to repair.

### B)    SUBSIDIARILY: AS TO UNENFORCEABILITY

113.  If the Court were not to grant the claim for nullity of the plaintiffs, then it would be appropriate to declare the resolution of July 8, 2021, **unenforceable** against the plaintiffs, as well as against Master Luxco for the following reasons:

114.  First of all, it should be recalled that the adage "*fraus omnia corrumpit*" has a corrective function "*which requires the judge to ensure fairness with these essential corrective measures that if the judge 'cannot give exactly more than the law gives him, he admits to taking away from the culprit the advantages that the legal situation that he had thought he had acquired (...).'*"[36]

115.  Its application may therefore "*take extremely various forms (unenforceability or nullity of an act, damages and interest), so that the perpetrator of the fraud cannot benefit from its fraud.*"[37]

116.  Fraud can thus lead not only to nullity, but also to the unenforceability thereof[38].

---

34    Court January 22, 2020, Role no. CAL-2017-00004
35    See e.g. Olivier CAPRASSE and Roman AYDOGDU, "*Les conflits entre actionnaires*" [*Conflicts between shareholders*], Larcier 2010, No. 441 et seq.
36    Court January 22, 2020, Role no. CAL-2017-00004
37    Court January 22, 2020, cited above
38    Court January 22, 2020, cited above: Lux. January 19, 2021, cited above

117. Then, case law admits that the application of the adage "*does not, however, rule out that of the rules of common law when the conditions of the latter are met, which translates, **either here also in the unenforceability of the act, this time if by way of reparation in kind founded on article 1382 of the Civil Code**[39],*"[40]

118. If the Court were not to grant the request for nullity as compensation in kind in accordance with what is requested under point A), 2) above, then it would be necessary to declare the resolution unenforceable against the plaintiffs for the reasons developed under point a) 2), which apply *mutandis mutatis* to unenforceability.

## C)    DAMAGES

119. The plaintiffs expressly reserve the right to claim damages, including through a separate action, in the event that the Court does not grant their request for nullity or generally for any damage that nullity would not be sufficient to repair.

## D)    ALL OTHER RIGHTS RESERVED AGAINST THE FOUNDERS

120. The plaintiffs also request that they expressly reserve all rights against Mr. KOWSKI and Mr. LUEKEN who must be considered as de facto managers of Novalpina GP and on the instruction of which Novalpina GP and Mr. ZINI and Mr. PILERI certainly acted.

121. In particular, the plaintiffs reserve the right to claim damages against them, without prejudice to any other rights and actions, either by summons to forced intervention or by a separate action.

## FOR THESE REASONS

declare this request admissible in the form;

on the merits, declare it justified;

## A)    Mainly

find that the resolution of July 8, 2021, is the result of fraud;

therefore, in application of the principle "fraus omnia corrumpit," order the cancellation of the resolution adopted on July 8, 2021, by the general meeting of the limited liability company NOAL Luxco S.à r.l.; in the alternative, declare, in application of the same principle "*fraus omnia corrumpit,*" that the resolution of July 8, 2021, is unenforceable against the plaintiffs and that Novalpina GP will not be able to rely on the principle of unanimity vis-à-vis the plaintiffs to prevent the adoption of future resolutions by the general

---

[39]        We highlight
[40]        Court January 22, 2020, cited above

meeting of shareholders of the limited liability company NOAL Luxco S.àr.l.;

## II.    Subsidiarily

rule, on the basis of the grounds set out in this summons, that Novalpina Capital Partners I GP S.àr.l. has committed a contractual fault or tort vis-à-vis the special limited partnership NOAL SCSp and that it incurs its contractual liability or tort vis-à-vis it;

rule that Mr. Stefano ZINI and Mr. Michael PILERI committed a contractual fault, if not tortious, with regard to the limited liability companies NOAL Luxco North S.à r.l. and NVP 103 S.à r.l., and that they incur their contractual liability, if not tortious, with regard to them;

rule that the three defendants have committed a tortious fault vis-à-vis BRG NOAL that incurs their tortious liability vis-à-vis them;

order, as compensation in kind, the cancellation of the resolution adopted on July 8, 2021, by the general meeting of the limited liability company NOAL Luxco S.à r.l.;

declare, in the alternative, as compensation in kind, that the resolution of July 8, 2021, is unenforceable against the plaintiffs and that Novalpina GP cannot use the principle of unanimity vis-à-vis the plaintiffs to prevent the adoption of future resolutions by the general shareholders' meeting of the limited liability company NOAL Luxco S.à r.l.;

## III.    IN ANY CASE

declare the joint judgment to the limited liability company NOAL Luxco S.à r.l.;

give notice to the plaintiffs that they expressly reserve the right to claim damages against the defendants, including in the context of a separate action;

Acknowledge that the plaintiffs also expressly reserve all rights against Mr. KOWSKI and Mr. LUEKEN who must be considered as de facto managers of Novalpina GP and on the instruction of which Novalpina GP and Mr. ZINI and Mr. PILERI certainly acted;

also to acknowledge that the plaintiffs reserve the right to claim damages against them, without prejudice to any other rights and actions, either by summons to forced intervention or by a separate action;

condemn the defendants to pay, jointly and severally, either *in solidum* or each for its part, to the Plaintiffs a procedural indemnity of **15,000 euros (fifteen thousand euros)** under Article 240 of the New Code of Civil Procedure, for all sums that the Plaintiffs must disburse, not included in the costs, such as attorneys' fees and that it would be unfair to leave at their sole expense, given the attitude of the summoned parties, having led to the dispute, the party Novalpina Capital Partners I GP S.à r.l. agree to be jointly and severally ordered, either *in solidum* or each for its part, at all costs and expenses of the proceedings all costs and expenses of the proceeding with distraction for the benefit of the concluding court lawyer claiming to have made the advance;

order the provisional enforcement of the judgment to be rendered notwithstanding any appeal, without surety, immediately and before registration;

reserve for the plaintiffs the right to produce, in addition to the exhibits listed in the body of this summons, all other exhibits in a useful time and place and as appropriate;

reserve for the plaintiffs other rights, dues, pleas, and actions;

**IN SUPPORT OF THIS REQUEST, THE FOLLOWING EXHIBITS ARE INVOKED:**

1.    Press articles concerning the dispute between the Founders;

2.    Letter from the Investors to Novalpina GP of June 25, 2021;

3.    *"Convening Notice"* of June 28, 2018;

4.    Email of July 8, 2021, from Mr. Gaëtan DUMONT in Proskauer;

5.    Extract from the Electronic Compendium of Companies and Associations of July 8, 2021, relating to the change of managers within Novalpina Capital Partners I Luxco North S.à r.l.;

6.    Extract from the Electronic Compendium of Companies and Associations of July 9, 2021, relating to the change of managers within NVP 101 S.à r.l.;

7.    Extract from the Electronic Compendium of Companies and Associations of July 9, 2021, relating to the change of managers within NVP 103 S.à r.l.;

8.    Extract from the Electronic Compendium of Companies and Associations of July 8, 2021, relating to the changes of managers within Master Luxco;

9.    Amendment of the corporate bylaws of Novalpina Partners I Luxco S.à r.l. of July 8, 2021;

10.    Articles of Association of Novalpina Partners I Luxco S.à r.l. of November 3, 2020;

11.    Minutes of the meeting of Investors of July 9, 2021;

12.    Presidential Order of July 20, 2021;

13.    Minutes of bailiff Guy ENGEL's report of July 21, 2021, on the results of the vote of the general meeting of the Investors of the Fund of July 9, 2021;

14.    Letters sent on July 23, 2021 by Novalpina GP to the Investors and the Fund;

**15.**    Order of August 4, 2021, handed down in the context of the dispute between the Founders,

**16.**    Email from Proskauer dated August 6, 2021, to the counsel of Novalpina GP;

**17.**    Letter dated August 9, 2021, from Novalpina GP to the Investors confirming the resolutions taken on August 6, 2021, by the Investors;

**18.**    Exchange of emails from July 29, 2021, to August 11, 2021, between Mr. Stefan KOWSKI, Mr. Stephan PEEL, and Proskauer regarding the transition process between the former and the new Manager;

**19.**    Excerpt from the Electronic Collection of Companies and Associations of August 13, 2021, relating to Novalpina GP;

**20.**    Letter of August 27, 2021, sent by BRG NOAL to the Investors confirming that the LPA conditions for the replacement of Novalpina GP and the appointment of BRG NOAL were met;

**21.**    Letter of August 27, 2021, sent by BRG NOAL, in particular to Novalpina GP confirming that the LPA conditions for the replacement of Novalpina GP and the appointment of BRG NOAL were met;

**22.**    "Pledge agreement" between the Fund, the GP, and others of August 28, 2021;

**23.**    Bastian LUEKEN's commitment of August 28, 2021;

**24.**    Commitment of Stephen PEEL of August 28, 2021;

**25.**    Commitment of Stefan KOWSKI of August 28, 2021;

**26.**    Commitment of GP Group of August 28, 2021;

**27.**    Commitment of Novalpina SCSp of August 28, 2021;

**28.**    Commitment of Clerendon Trust of August 31, 2021;

**29.**    Email from White & Case to Proskauer of August 30, 2021;

**30.**    Confirmation of Mr. Stephen PEEL;

**31.**    Confirmations by Mr. Stefan KOWSKI and Mr. Bastian LUEKEN;

**32.**    Confirmations from Novalpina GP, Novalpina SCSp, and GP Group;

**33.**    Confirmation of BRG NOAL;

**34.**    Resignation of Mr. Stephen PEEL from Master Luxco of September 6, 2021;

**35.**    Resignation of Mr. Bastian LUEKEN from Master Luxco of September 6, 2021;

**36.**    Ruling of December 8, 2021, handed down in the context of the dispute between the Founders;

**37.**    Summons on the merits of February 15, 2022, of Novalpina GP against in particular Master Luxco, the Fund, and the Portfolio Companies;

38.     Letter of February 15, 2021, from Brucher, Thieltgen & Partners to Mr. Finbarr O'CONNOR;

39.     Letter of February 16, 2022, from Brucher, Thieltgen & Partners to the Ad Hoc Bondholder Group of the company ODYSSEY EUROPE HOLDCO SARL;

40.     Letter dated February 16, 2022, from Brucher, Thieltgen & Partners to NSO Group;

41.     Letter dated February 16, 2022, from Proskauer to Burcher, Thieltgen & Partners,

42.     Summons of February 23, 2022, in summary proceedings of Novalpina GP;

43.     Substantial summons of February 25, 2022, of Novalpina GP, Novalpina SCSp, and GP Group, against BRG NOAL, the Fund, and other entities, including members of the LPAC;

44.     Organizational chart of the Fund prior to the change of manager;

45.     Organizational chart of the Fund after the change of manager;

46.     Press review of the NSO situation;

47.     Emails exchanged between councils between August 18 and 28, 2021, as part of negotiations about the change of the LPA, the issue of "*Promissory Notes,*" the Pledge, and the Valuation Principles;

48.     Email from Mr. Stefano PILERI of August 26, 2021;

49.     Complaint with constitution of civil party filed on April 21, 2022, against Mr. PILERI, Mr. ZINI, and others on the basis of Article 1500-11 of the Law of 1915;

50.     Email from MACFARLANES dated August 31, 2021;

51.     *Second Amended and Restated Limited Partnership Agreement* applicable at the time of the resolution of July 8, 2021;

52.     Interim order of June 17, 2022, in role TAL-2022-01572

Duly noted, subject to all reservations

| COST | |
|---|---|
| FEE | 144.00 |
| COP | 90.00 |
| TRAV | 40.00 |
| ADR | 28.80 |
| EXCL. TAX | 302.80 |
| VAT | 51.48 |
| TOTAL | 354.28 |
| REG | 12.00 |
| TIM | 118.00 |
| P&T | 20.00 |
| ALL TAXES AND CHARGES INCLUDED | 504.28 |

[signature]

[stamp:] REVENUE STAMP GRAND DUCHY OF LUXEMBOURG €2
21 / 21