Jesse Mondry, OSB #192559
Harris Bricken Sliwoski, LLP
511 SE 11th Ave.
Suite 201
Portland, OR 97214
Tel. 503-549-4636
Jesse@harrisbricken.com

Tara J. Plochocki, DC Bar 989404
Lewis Baach Kaufmann Middlemiss pllc
1050 K Street NW
Suite 400
Washington DC  20001
Tel. 202-659-7217
tara.plochocki@lbkmlaw.com

*Counsel for Petitioner Novalpina Capital Partners I GP S.À.R.L.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| IN RE PETITION OF NOVALPINA CAPITAL PARTNERS I GP S.À.R.L. FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No.  3:23-mc-82-IM<br><br>**PETITIONER'S OMNIBUS OPPOSITION TO TREO'S AND RESPONDENTS' MOTIONS FOR RECONSIDERATION, TO AMEND THE PROTECTIVE ORDER, AND FOR RECIPROCAL DISCOVERY** |

      Petitioner Novalpina GP files this opposition to Treo Asset Management LLC's and Treo NOAL GP's ("Treo") Motion for Reconsideration of the Grant of the Petition or to Amend the Protective Order and to Tobias Read's and Michael Langdon's ("Respondents") Cross-Motion to Amend Protective Order and for Reciprocal Discovery.  There are no grounds to grant these motions.  Treo and Respondents distort the record to create the appearance of impropriety, but what they complain of is entirely ordinary and well-accepted practice in U.S. courts.  And even if

PETITIONER'S OMNIBUS OPPOSITION TO MOTIONS TO RECONSIDER, AMEND
THE AGREED PROTECTIVE ORDER AND FOR RECIPROCAL DISCOVERY- 1

it were not, Respondents Langdon and Read entered an agreement which expressly allows for the "[u]se or disclosure" of confidential documents by indirect shareholders of Novalpina GP, as well as its associates and affiliates "in litigation relating to the events described in the Petition." ECF #36 at 4.2(b). Importantly, there are no restrictions at all on the use of non-confidential documents now, nor does Treo's proposed amended protective order, which Respondents support, impose any. There is no cause to reverse the grant of the Petition where Petitioner acted in accordance with law and the parties' negotiated Protective Order, which was entered by this Court on Respondents' own motion and upon which Novalpina GP relied. Nor is there cause to amend the Protective Order; it has been and will be complied with. And the Court should not order reciprocal discovery where Respondents have not justified or even identified it.

## RELEVANT PROCEDURAL FACTS

1. **Representations to the Court**

Petitioner sought documents for use in a contemplated fraud claim to be filed and in defense against a pending lawsuit filed by Treo. The subpoena accordingly aimed to capture evidence that Treo and the LPAC had lied, that is, they could value the Fund in order to pay the Sponsor Commitment and Removal Entitlement, they knew the amount would be significant, and they set out to trick Novalpina GP and affiliates into agreeing to valuation principles that they never intended to honor. The subpoena further sought defensive evidence that Novalpina GP's amendment of the bylaws of the Fund's asset holding company were known to and useful to Treo in dealing with its creditors. And finally, the subpoena sought evidence of corruption in management of the Fund, demanding documents relating to the "bidding process" for the sale of LXO, the decision to sell to Stanley Capital Partners specifically, as well as payments made to

Treo or Langdon in connection with Novalpina GP's replacement. Decl. of Tara J. Plochocki ("1st TJP Decl.") ¶ 8, Ex. 5 (ECF #5-5).

In Treo's and Respondents' telling, Petitioner promised this Court that the documents would not be used in other proceedings. Petitioner did no such thing. The Petition stated that "Novalpina GP does not file this Petition" in connection with its pending lawsuits against Treo and the limited partners and that was true. One of those actions was a "straightforward contract dispute and seeks to remedy the breaches of the LPA." Pet. Mem. of Law at 13 (ECF #2). It is the only pending proceeding where Langdon and OPERF are defendants. As represented to this Court and recounted in Treo's and Respondents' Motions, Novalpina GP stated—truthfully—that it did not file the Petition seeking documents for use in that proceeding or any other proceeding. As discussed below, no evidence exists to the contrary.

2. **The Agreed Protective Order**

This Petition was filed on January 27, 2023. Respondents first produced documents on December 8 and 15, 2023. On December 27, 2023, counsel for Respondents sent a draft protective order to protect confidential information. On January 4, 2024, counsel for Novalpina responded with edits, which included broadening the scope of Paragraph 4.1 to include "direct or indirect shareholders" or "affiliate" or "counsel." Mr. Kowski is, like other direct and indirect shareholders of Novalpina GP, a fact witness and needed to be included. And, the fraud action almost certainly will have more than one Novalpina-related plaintiff. Petitioner also changed the scope of use to "litigation relating to the events described in the Petition," from "litigation relating to this Petition." The latter is arguably just as broad as the former, but ambiguous. The new language is a more accurate description of the pending and contemplated foreign proceedings.

The Protective Order only requires the parties to provide notice when there is an intent to use the documents in litigation such that the protected information would become publicly accessible. Order ¶ 4.3 (ECF #36). The meaning of this clause is made clear by the sentences that follow:

> If a providing party wishes to prevent the use of Protected Material in public, it may apply to the court presiding over the litigation for an order prescribing any restrictions on public disclosure in those proceedings. For lack of doubt, all Protected Material may be used in litigation.

Thus, only where the purpose of the Protective Order—protecting confidential information—is potentially in jeopardy must notice be provided to the producing party.

Respondents pushed back on some of Petitioner's changes, but none made to Paragraph 4.1. Three weeks later, after other minor tweaks, Respondents filed the proposed protective order. On February 13, 2024, the Court entered the Protective Order and on February 17, 2024, Respondents made another production.

### 3. Use of the Documents in Other Proceedings

Following entry of the Protective Order, certain confidential and non-confidential documents were used in three foreign proceedings, all of which relate to events described in the Petition.

**First,** on March 17, 2023, Treo opposed the appointment of a neutral judicial valuer in the breach of contract litigation to which Langdon is a party. Treo also contended that if the Luxembourg court nevertheless decided to appoint a judicial valuer, then it should not permit that valuer to see a 2021 valuation performed by Ernst & Young, one of the "big 4" accounting firms because it is not independent. Decl. of Nicolas Thieltgen ("3rd Thieltgen Decl.") ¶ 10.b (ECF #41). On February 22, 2024, Novalpina's counsel introduced two emails contained in the document production which showed that both the LPAC and Treo, in fact, believed Ernst & Young was

PETITIONER'S OMNIBUS OPPOSITION TO MOTIONS TO RECONSIDER, AMEND
THE AGREED PROTECTIVE ORDER AND FOR RECIPROCAL DISCOVERY- 4

reliable and independent, and continued to so believe even after reviewing the 2021 evaluation. *See* ECF 39-7 (Treo stating "we believe it is unlikely that a big-four valuation practice would conduct this [valuation] work other than independently"). *Id.*

**Second**, on March 9, 2023, Treo and the Fund filed a lawsuit against Novalpina FP I SCSp, the Carried Interest Partner, which is entitled to the Removal Entitlement and part of the Sponsor Commitment. 2nd Thieltgen Decl. ¶ 8 (ECF #31). It is managed by Novalpina Group GP; Michael Zini and Stefano Pileri are directors of both Novalpina Group GP and Petitioner Novalpina GP. Per the Petition, the Carried Interest Partner initiated suit in Luxembourg to enjoin distributions from the Fund until it was paid. Treo's March 9 retaliatory suit claimed that the injunctive suit was abusive. On March 26, 2024, the Carried Interest Partner included eight documents in a non-public filing which showed that Treo and the LPAC had never intended to pay the Removal Entitlement or Sponsor Commitment on the agreed terms and thus the injunction was necessary. Da Silve Decl. ¶ 8 (ECF #50); 3rd Thieltgen Decl. ¶ 10.b.

**Third**, on February 7 and October 5, 2023, Treo made sworn statements in one of its UK lawsuits against Stefan Kowski and Bastian Lueken. Pearson Decl. ¶ 4 (ECF #40). Treo declared that because of a success fee had been paid by a subsidiary of the Fund in connection with the Fund's acquisition of LXO, Treo began considering a sale of LXO on May 13, 2022 and otherwise would have kept LXO for at least another two years and made more profits for the Fund – allegedly lost profits Treo were now claiming from Mr. Kowski and Mr. Lueken. *Id.* These sworn statements by Treo are false and Langdon's documents showed it. Upon learning of this, Mr. Kowski's counsel said so in a February 20, 2024 letter sent to Treo and its counsel along with five documents. *Id.* ¶ 6; Savage Decl. ¶ 5 (ECF #49).

Contrary to Treo's assertions, none of these proceedings are beyond the scope of the Petition; all relate to the events described in the Petition and the documents were used in response to new false statements made by Treo in pleadings filed after the Petition.

### 4. The Meet and Confer Over Treo's Motions

Treo and Novalpina GP met and conferred on April 3, 2024 regarding Treo's intention to move for modification of the protective order. While counsel for Langdon and Read attended the call, they stated that they did not have plans to join that motion or file their own. Counsel for Novalpina expressed a willingness to discuss a compromise and an interest in deescalating with Treo. All appearances to the contrary, Treo did not share Novalpina GP's interest in de-escalation; on April 8, 2024, Treo's counsel wrote to the judge in Luxembourg and announced an intention to commence bar proceedings against Novalpina's counsel for using several of documents produced in this action. (ECF #43). To the extent Treo had been acting in good faith in seeking a compromise, it ceased to do so when it launched an attack on Novalpina's counsel in the middle of that process. Two days later, on April 10, 2024, Novalpina GP filed a Motion to Compel against Langdon and Read, for which there had been an entirely separate failed meet and confer some weeks prior. 3rd Plochocki Decl. ¶ 5 (ECF #39). Counsel for Treo previewed its motion for reconsideration on April 15, 2024 via email; the parties confirmed that they would not reach resolution through a further meet and confer. Counsel for Respondents previewed their motions in an email on April 23, 2024.

## ARGUMENT

### A. Treo's Motion to Reconsider Fails.

Treo's motion for reconsideration does not cite a single case in which a Court vacated its grant of a § 1782 Petition because the documents were used in other proceedings. It can't, because

there are none, and there is no reason this case should be the first.  Motions to reconsider based on newly discovered evidence per FRCP 60(b)(2) are to be denied unless the movant shows that "the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was 'of such magnitude that production of it earlier would have been likely to change the disposition of the case.'"  *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (post-trial discovery of withheld document acknowledging defect in product insufficient for motion to reconsider).

This is a tough standard, and impossible to meet here, where federal discovery rules allow documents to be shared and used in other litigation by default.  This remains true even where a different foreign proceeding served as the basis for the grant of a § 1782. "[E]vidence of cooperation and the specter that evidence relevant and discoverable in one proceeding might be shared with an interested party in parallel or related proceedings does not constitute bad faith sufficient to deny an otherwise valid application under § 1782." *In re Republic of Ecuador*, No. C-10-80225 MISC CRB, 2011 WL 736868, at *3 (N.D. Cal. Feb. 22, 2011) (denying motion for reconsideration); *JSC MCC EuroChem v. Chauhan*, No. 3:17-MC-00005, 2018 WL 3872197, at *7 (M.D. Tenn. Aug. 15, 2018) (change in which proceeding discovery to be used does not qualify as an "exceptional or extraordinary circumstance" that would justify relief under Rule 60(b)(6)); *In re Niedbalski*, No. 21-MC-747 (JGK), 2023 WL 4399003, at *2 (S.D.N.Y. July 7, 2023); (denying motion to reconsider grants of § 1782 petitions where opponent speculated ulterior motives).

Treo offers no "newly discovered evidence" within the meaning of Federal Rule of Civil Procedure 60(b) and thus fails the test for a motion to reconsider.  What Treo offers is a conspiracy theory that Novalpina GP harbored secret intentions for broader use of the documents.  This theory

is easily disproven. A limited number of documents were used in proceedings—one of which did not even exist at the time the Petition had been filed—in response to statements that had not been made yet. *See supra* at 4-5. Expressly permitted use of the documents in other proceedings is not evidence of bad faith; it is proof that neither Petitioner nor their counsel is clairvoyant. They could not know what statements would be made, in which proceeding, by whom, or whether the documents produced by Respondents would directly contradict statements made by Treo in those proceedings. What Petitioner did know for certain remains true: it needs the documents for the nullity litigation and for their lawsuit for fraud. That certain of the documents were used in proceedings shortly after their production does not belie prior intent of distribution. The production was made just after this Court's entry of the Protective Order in which the Respondents' counsel—sophisticated, top-flight lawyers acting on behalf of a State—had expressly agreed that confidential documents could be used in other actions by other persons and entities. The documents contained stunning revelations about the premise of one of the actions against Mr. Kowski; his UK counsel promptly and privately raised with UK counsel for Treo. Pearson Decl. ¶ 6. Using documents produced by Respondents to address—with Treo—untrue sworn statements made to an English court *by Treo* is neither unfair nor inappropriate.

      Even if Treo could show that Petitioner had intended to use the documents elsewhere at the time the Petition was filed—which is not true and has not been shown—Treo would still fail the test because there is no showing that it likely would have changed the disposition of the case. *Jones*, 921 F.2d at 878. Treo does not argue that the use of the documents by the Carried Interest Partner or Mr. Kowski to defend against Treo would not qualify for § 1782 assistance. That Michael Langdon and Oregon are parties in the breach of contract case conceivably affects only the first discretionary factor in *Intel* and only with respect to that case. *Intel Corp. v. Advanced*

PETITIONER'S OMNIBUS OPPOSITION TO MOTIONS TO RECONSIDER, AMEND
THE AGREED PROTECTIVE ORDER AND FOR RECIPROCAL DISCOVERY- 8

*Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("when the person from whom discovery is sought is a participant in the foreign proceeding (as Intel is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"). The three statutory factors have been satisfied and the other three discretionary factors unequivocally weigh in Novalpina's favor. Even then, Treo does not and could not argue that the *two emails* used as rebuttal evidence in the breach of contract litigation in which Langdon is a defendant could have been obtained in that proceeding such that the first *Intel* factor should have instead weighed against Novalpina GP for use in the other proceedings.

      Whether Langdon was a party to cases for which discovery was sought did not animate the Court's Order: Novalpina GP is going to sue Langdon for fraud using the evidence obtained directly from him. The relevant inquiry as rightly observed by this Court "is whether the material is obtainable through the foreign proceedings." The Court ruled that the first factor weighed in favor of granting the petition, citing *Lufthansa Technik v. Panasonic Avionics Corp.*, No. C17-1453-JCC, 2017 WL 6311356, at *2 (W.D. Wash. Dec. 11, 2017), and explaining that the Court in that case found that the first factor weighed in favor of granting even where the "subject of discovery was a party to the pending proceeding [because] the foreign court's jurisdictional limit effectively rendered the party out of reach of the petitioners." There is no reason to overturn the grant of discovery; Langdon's argument that he is subject to the exclusive jurisdiction of Oregon's state courts renders him effectively out of reach of Luxembourg's courts even now. *See* ECF #26 at 2-3.

PETITIONER'S OMNIBUS OPPOSITION TO MOTIONS TO RECONSIDER, AMEND
THE AGREED PROTECTIVE ORDER AND FOR RECIPROCAL DISCOVERY- 9

B. **Treo's and Respondents' Motions to Amend the Protective Order Also Fail.**

1. **Legal standards for modifying protective order.**

Protective orders are not the norm, and once entered, they may only be changed where the movant can show good cause and specific harm. *See Blum v. Merrill Lynch Pierce Fenner & Smith Inc*., 712 F.3d 1349, 1355 (9th Cir. 2013) (altering blanket protective order to grant a third party access to discovery). On such a motion, courts should consider the "ongoing rights of the original parties due to their reliance on the protective order" and require the party resisting disclosure to make an actual showing of good cause for continued protection. *Id.* Where the protective order was agreed by the parties, the burden on the party seeking modification is higher. *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1978) (giving nonparty access to discovery). It is black letter law that agreements negotiated between sophisticated adversaries at arm's length should not be modified by the court; instead, those parties should be bound by the terms of their agreement. *See, e.g., Morris v. Zusman,* 857 F. Supp. 2d 1082, 1097 (D. Or. 2012) (enforcing agreement "negotiated at arm's length between two parties of approximately equal bargaining power"); *Tycom Corp. v. BancBoston Ventures, Inc*., 108 F.3d 1386 (9th Cir. 1997) (enforcing conspicuous liquidated damages clause "negotiated at arm's length by two sophisticated commercial parties"); *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1338 (9th Cir. 1992) (enforcing broad release negotiated by counsel).

2. **Discovery may be used in other proceedings by default.**

That Respondents and Treo do not like the agreed Protective Order is not a reason to modify it to be more restrictive. As a general matter, courts in this country embrace the view that disputes—wherever they may be—should be resolved on the merits in open court. *L. Tarango Trucking v. Cnty. of Contra Costa*, 202 F.R.D. 614, 620 (N.D. Cal. 2001) (stating "sunlight is the

best disinfectant" in a suit alleging misconduct by public officials); *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, No. 3:20-CV-1681-AC, 2021 WL 186932, at *2 (D. Or. Jan. 19, 2021) ("[T]he fact that the parties may have stipulated to a protective order is not itself a basis for sealing or otherwise restricting access to any specific discovery material.")

Treo's and Respondents' argument that the Protective Order expanded the use of the documents has the natural order of things backwards. Novalpina GP could *already* use the documents in other proceedings and in collaboration with other parties. The Protective Order did not change that; it confirmed it. Courts have long recognized that the Federal Rules allow related parties litigating similar issues to collaborate in discovery, including in the § 1782 context, and have refused to enter protective orders altering that norm. *Am. Tel. & Tel. Co.*, 594 F.2d at 597; *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y. 1973) (rejecting 1782 protective order that "limits unacceptably the use of this information in foreign litigation of a closely related nature involving what essentially are the same parties"); *Elm Energy & Recycling (U.K.) Ltd. v. Basic*, No. 96 C 1220, 1996 WL 596456, at *9 (N.D. Ill. Oct. 9, 1996) ("[T]he fact that the parties to the separate action in the UK would be interested in the discovery that the parties to this action may obtain does not necessarily lead to the conclusion that the parties should be precluded from getting discovery").

Thus, by default, there are no restrictions at all on the use of discovery obtained in a Section 1782 action. As set out in the Motion to Compel and reiterated here, "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017). There is absolutely "nothing in the language of § 1782 ... purports to limit later uses of evidence that have been properly obtained under § 1782." *Glock v. Glock*, 797 F.3d

1002, 1006 (11th Cir. 2005) (holding as a matter of first impression that Section 1782 does not bar, as a matter of law, the use of evidence obtained pursuant to it in subsequent United States civil litigation). In granting § 1782 petitions like this one, courts have repeatedly reaffirmed the basic rule that parties may use lawfully obtained discovery wherever they would like. *In re Ferrer*, No. 18-20226-CIV, 2018 WL 3240010, at *5 (S.D. Fla. July 3, 2018), on reconsideration in part, No. 18-20226-CIV, 2018 WL 4575043 (S.D. Fla. Sept. 5, 2018) (granting discovery where its use would be possible in other proceedings); *In re Al-Attabi*, No. 21MC207VSBRWL, 2022 WL 229784, at *9 (S.D.N.Y. Jan. 26, 2022), appeal dismissed sub nom. *Al-Attabi v. Bank Audi S.A.L.*, No. 22-524, 2022 WL 2116043 (2d Cir. May 9, 2022) (granting 1782 even though discovery may have other possible uses in other cases).

Treo's and Respondents' complaints are entirely without merit, and the Second Circuit confirmed this in *Federal Republic of Nigeria v. VR Advisory Services, Ltd.*, 27 F.4th 136, 158 (2d Cir. 2022). There, Nigeria sought discovery for use in Nigerian proceedings, but the district court denied the petition, swayed by respondents' contention that it Nigeria might really want to use the discovery in English proceedings that were not one of the bases of the petition. The Second Circuit reversed, ruling that even if Nigeria did end up using documents in other proceedings, there would be nothing improper about it. *Id.* at 157. It held that the "possibility of use in a different but independently qualifying proceeding does not constitute an attempt to "circumvent" a proof-gathering restriction or policy of the United States or a foreign state" and thus the existence of and use of documents in other litigation should not be construed against a petitioner. *Id.* at 158. The Court further rejected claims of Nigeria's "dishonesty" about its intentions, since it was "within its rights" to use the documents in other proceedings, thus rendering the intent to do so, if any, irrelevant.

### 3. There is no evidence of "chicanery" warranting modification of the Protective Order.

While courts have derided the idea that a party would bring "sham litigation" as a ruse to obtain evidence for use in other proceedings application as a "far-fetched concern," they nevertheless have invited respondents to bring any evidence of "chicanery" to the court's attention, they rarely find it. *In re Accent Delight Int'l Ltd.*, 869 F.3d at 135.

For substantially the same reasons the motion to reconsider has no new evidence, there is no evidence of "chicanery" warranting revision to the protective order. There has been no showing that Petitioners sought discovery for the purpose—much less the "sole purpose"—of using it in other proceedings. *Am. Tel. & Tel. Co.*, 594 F.2d at 597. As noted above, documents have been used in proceedings and in response to statements made after the Petition was filed, defeating any claim that the Petition was a ruse to support other proceedings. Petitioner's proposed changes to the Protective Order were in tracked changes, minimal, and unambiguous. The State of Oregon regularly uses protective orders and its Counsel has extensive experience and exquisite credentials. It strains credulity that counsel for Oregon and Langdon claim they did not appreciate that the Protective Order permits confidential documents to be used in other proceedings or by other entities (to say nothing of non-confidential documents). Regardless, Petitioner did not trick anyone. It asked for changes and got them.

The fact that Novalpina GP received some documents between December 2023 and February 2024 without filing the fraud claim or submitting their brief in the nullity litigation is totally irrelevant. As evidenced by the motion to compel, Respondents have refused to complete their production. And, as disclosed to the Court, a sister 1782 Petition was pending in the Southern District of New York. That petition has been granted and the motion to quash has been pending

since last August. *See* Docket, 23-mc-00025-PGG (SDNY). There is no proposition of law or equity that allows a court to punish a party for failing to use evidence sought but not yet obtained.

Treo makes much of the fact that Mr. Kowski says that does not control Novalpina GP, but why this matters at all is not explained. While Mr. Kowski has never controlled Novalpina GP, he certainly connected to them: he is one of the founders of the Novalpina Group, indirectly owns a minority stake in it, and most importantly, is one of Novalpina GP's fact witnesses. Treo cannot credibly claim that Mr. Kowski is some random individual after initiating a battery of lawsuits and complaints against him and other minority shareholders of the Novalpina Group as part of Treo's and Michael Langdon's "post-transition takedown" plan following Treo's unlawful takeover of the Fund he co-founded. 3rd Plochocki Decl. ¶ 8, Ex. 4.

**4. The proposed modifications to the Protective Order are not justified.**

Even if the Court were inclined to modify the Protective Order, there is no good cause for any of the changes sought. First, none of the changes are intended to address what the Protective Order is supposed to accomplish: keeping truly confidential information out of public view. Neither Motion to Amend explains how, if at all, the Order has been violated. The sole complaint is that Respondents and Treo do not want any confidential documents produced by Oregon's public official to be used by persons or entities related to Novalpina GP even though Respondents agreed to allow just that. The Court should not permit Respondents to take a second bite at the apple simply because they regret their agreement.

Second, the restrictions proposed do not make any sense. As written, Treo's edits would preclude Novalpina GP's Luxembourg counsel from seeing confidential documents. There is only one proceeding in which Mr. Langdon is a defendant and only two emails—one of which was not confidential—were used to rebut an argument that Treo advanced (that Ernst & Young was not

independent, ECF #41 ¶ 10.b). The proposed amended order espoused by Respondents contains nothing on the use of non-confidential documents. Respondents fail to articulate why they insist on restrictions on the use of confidential documents in the breach of contract litigation, but would accede to an order that does not preclude the use of non-confidential documents in that proceeding. Beyond the fact that Langdon is a party to the breach of contract litigation in Luxembourg, Respondents offer no reason at all to limit the use of the documents, confidential or otherwise.

As much as Respondents and Treo may not like Mr. Kowski, he is a key fact witness and it is unreasonable that Novalpina GP should be required to prepare its claim and defenses without the benefit of the evidence obtained here. It is unfortunate that the documents confirm that the wave of actions against him are part of a planned takedown perpetrated, in part, by a public official of this State, and that the LXO-related lawsuit was brought against him false pretenses. But equity does not dictate that this Court should issue a retroactive gag order to prevent him from showing English or Luxembourg judges evidence that establishes that claims have been filed in their courts on false pretenses. Likewise, Novalpina GP's efforts are directed at holding Treo and others to account for defrauding them out of the Removal Entitlement and Sponsor Commitment, which would be paid in part to its affiliate, the Carried Interest Partner and ultimately, to its limited partners, one of which is Mr. Kowski. It makes no sense that Novalpina GP should have to advance that effort without any collaboration with co-plaintiffs, or with co-defendants in response to new claims filed against them, such as the retaliatory action brought by Treo a few weeks after Novalpina GP filed this Petition.

### C. Reciprocal Discovery Is Not Warranted

Respondents fail to establish grounds for reciprocal discovery. They ask the Court to grant them reciprocal discovery without ever saying that they need it and without identifying what it is

they seek.[1] The Court cannot grant their motion in these circumstances. *Rep. of Kazakhstan v. Lawler*, No. CV-20-00090-PHX-DWL, 2020 WL 417541, at *6 (D. Ariz. Jan. 27, 2020) (denying request for reciprocal discovery where no showing of need). Courts rarely grant reciprocal discovery to a respondent in a § 1782 petition. "Grants of discovery under § 1782 are not contingent on the requesting party's acquiescence to reciprocal discovery." *In re Imanagement Servs., Ltd.*, No. MISC 0589FB, 2005 WL 1959702, at *6 (E.D.N.Y. Aug. 16, 2005). The statute "is a one-way street," providing "wide assistance" to some but "demand[ing] nothing in return." *In re Porsche Automobil Holding S.E.*, No. 19-MC-166 (RA), 2021 WL 2530277, at *7 (S.D.N.Y. June 21, 2021).

To obtain reciprocal discovery, Respondents would have to show that they qualify for it. They have not bothered to make any such showing, nor could they. In joining Treo's motion, Respondents endorse allegations that the prospective fraud claim is a sham, thus failing to meet the statutory requirements of § 1782. To obtain reciprocal discovery, Respondents "would have to agree that there is a foreign proceeding within reasonable contemplation." *In re Application of Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 620 (S.D.N.Y. 2018), *aff'd sub nom. In re Furstenberg Fin. SAS*, 785 F. App'x 882 (2d Cir. 2019) (denying request for reciprocal discovery as "antithetical" to respondents' arguments).

The discovery sought is not even reciprocal. Respondents insist on discovery from Mr. Kowski but they do not state that they are in litigation with him or to what end they would or even could use the evidence they seek, whatever that evidence might be. In any case, the Court does not acquire jurisdiction over Mr. Kowski simply because he has used documents produced in the

---

[1] Respondents' Motion references document requests but none were filed.

PETITIONER'S OMNIBUS OPPOSITION TO MOTIONS TO RECONSIDER, AMEND THE AGREED PROTECTIVE ORDER AND FOR RECIPROCAL DISCOVERY- 16

United States. *Id.* at 620-621 (denying request for reciprocal discovery for insufficient showing and targets were not in the district).

Respondents did not seek reciprocal discovery at the outset of this action, produced non-confidential documents that are subject to no restrictions at all, and confidential documents that have been used in accordance with an agreed order. It is improper and impractical to retroactively impose a reciprocity condition or any other condition on the use of the documents.

## CONCLUSION

For the reasons set forth above, Petitioner respectfully requests the Court to deny Treo's and Respondents' Motions.

DATED this 10th day of May 2024.

LEWIS BAACH KAUFMANN MIDDLEMISS pllc

By: s/ Tara J. Plochocki
Jesse Mondry, OSB #192559
Harris Bricken Sliwoski, LLP
511 SE 11th Ave.
Suite 201
Portland, OR 97214
Tel. 503-549-4636
Jesse@harrisbricken.com

Tara J. Plochocki (DC Bar 989404)
Lewis Baach Kaufmann Middlemiss pllc
1050 K Street NW
Suite 400
Washington DC 20001
Tel. 202-659-7217
tara.plochocki@lbkmlaw.com

*Counsel for Petitioner Novalpina Capital Partners I GP S.À.R.L.*