**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**PETER D. HAWKES**, OSB No. 071986
peter@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Phone: (503) 954-2232

**EDWARD B. DISKANT** (pro hac vice)
ediskant@mwe.com
MCDERMOTT WILL & EMERY LLP
1 Vanderbilt Avenue
New York, NY 10017
Phone: (212) 547-5754

**JAMES P. DURKIN** (pro hac vice)
jdurkin@mwe.com
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
Phone: (312) 984-2062
*Attorneys for Treo Asset Management LLC and Treo NOAL GP*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| In re:<br><br>PETITION OF NOVALPINA CAPITAL PARTNERS I GP S.À.R.L. FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No.: 3:23-mc-82-IM<br><br>Intervenors Treo Asset Management LLC and Treo NOAL GP's **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER** |

In opposing reconsideration, Petitioner Novalpina Capital Partners I GP S.a.r.l. ("Novalpina GP") contends principally that reconsideration is not proper here because the "federal rules allow documents to be shared and used in other litigation by default" and therefore Petitioner's subsequent use of documents produced does not warrant reversing the Court's grant of the Petition. But whatever currency that position might have in other cases, here the parties *expressly* raised concerns that Petitioner might use documents produced in this matter in litigations other than the two identified in the Petition, and in response to those concerns, Petitioner, through counsel, *repeatedly* and *unequivocally* assured this Court that such misuse would not occur. Moreover, the restriction on the use of documents produced – and the concern of misuse of the same – was reinforced after the Petition was granted, with counsel for Respondents seeking and the Court entering a protective order reasonably understood by Respondents to reinforce, not undo, the repeated representations made by Petitioner to the Court about how confidential documents produced in discovery would be used.[1]

Indeed, while labeling Treo's motion a "conspiracy theory," Petitioner does not and cannot dispute the essential facts warranting reconsideration: Petitioner told the Court one thing in seeking relief, and then turned around and did the exact opposite. That is a classic ground for reconsideration and it warrants reconsideration here.

---

[1] While the instant filing focuses principally on Treo's motion for reconsideration, it bears reiteration that Treo was not involved in the drafting or negotiation of language in the existing Protective Order. It is thus disingenuous at best for Petitioner to suggest that Treo's concerns can be dismissed as mere dissatisfaction with "the agreed Protective Order." (Br. at 10.) "Br." refers to Petitioner's Opposition at Dkt. No. 56.

PAGE 1 – INTERVENORS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
       OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE
       ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

I. **Petitioner's Misuse of Highly Confidential Documents Constitutes "Newly Discovered Evidence"**

*First,* Petitioner's misuse of documents produced – sharing them with multiple non-parties and using them in additional litigations, including the matter referred to as "Summons 4"[2] – constitutes "newly discovered evidence" warranting reconsideration. *See Seeley v. Portland Pub. Sch.*, No. 3:23-CV-386-SI, 2023 WL 8622357, at *2 (D. Or. Dec. 13, 2023) (citing *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990)). Notably, Petitioner does not dispute that (1) it shared confidential documents with two non-parties, Stefan Kowski and Novalpina FP, or (2) that confidential documents have been used by Kowski, Novalpina FP, and Petitioner itself in three litigations, including the Summons 4 litigation that Petitioner expressly and repeatedly assured the Court was not within the scope of the Petition. Instead, Petitioner tries to deny that it "promised this Court that the documents would not be used in other proceedings." (Br. at 3.) That claim does not withstand scrutiny; Petitioner *repeatedly* disclaimed any intent to use documents in the mix of other litigation pending abroad, doing so in its petition (Dkt. 2 at 14–15); in argument before the Court (Dkt. 25 at 9:24–11:18); and its reply brief (Dkt. 30 at 4). Notably it did so in direct response to arguments raised by Treo and Respondents about this very issue – i.e., the likelihood that documents sought would be used in matters other than the two identified in the Petition.

Alternatively, Petitioner argues that it could "not know what statements would be made, in which proceeding, by whom, or whether the documents produced by Respondents would directly contradict statements made by Treo in those proceedings." (Br. at 8.) But even if such an argument

---

[2] A more complete description of the Summons 4 litigation is already before the Court as set forth in the original declaration of Paulo Lopes da Silva and Treo's original brief in opposition to the Petition. (Dkt. 29 at 4–5; Dkt. 28 at 7–8). It is also briefly addressed in the current Lopes da Silva declaration as relevant to claims made in Petitioner's brief in opposition. (da Silva Decl. at ¶¶ 5–6.)

PAGE 2 – INTERVENORS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

is credited, that could have been Petitioner's position in seeking discovery, i.e., Petitioner could have told this Court either in its application or in response to direct questioning on this subject that it sought use of documents in *all* of the various pending foreign proceedings because it simply could not know what it might receive. Notably, two of the three additional litigations in which documents produced have been misused[3] were already pending at the time the Petition was filed and the third – referred to as the Breach of Loyalty Claim – was commenced in March 2023, or shortly after the Petition was filed and several months *before* the parties' appearance before the Court or ensuing briefing. (da Silva Decl. ¶¶ 3–4.) All three matters were thus fully known to Petitioner prior to this Court's ruling on the Petition. And yet that was decidedly *not* Petitioner's position – indeed Petitioner expressly and repeatedly disclaimed such a position – and that cannot have been accidental. Not only did it happen too frequently and repeatedly, but as discussed in Treo's opening brief and in detail below, Petitioner's application would have faced considerable additional headwinds if Petitioner had candidly acknowledged its intent to use documents in the broader array of foreign litigation.

And while Petitioner dismisses Treo's very legitimate concerns that Petitioner intended all along to misuse documents obtained as a "conspiracy theory," (Br. at 7–8) the facts tell a very different story: in particular, Petitioner appears to have shared these highly confidential documents with non-parties *immediately* upon receiving them, strongly suggesting it was their intent to do so *all along*. Petitioner contends that Kowski is "a key fact witness" and thus that it is "unreasonable

---

[3] The two already pending were Summons 4, in which Petitioner itself has used documents, and the litigation commenced against Stefan Kowski in his individual capacity over his role in authorizing payment of a €1 million bribe, using Fund assets, in connection with the acquisition of LXO. Because Petitioner deeply mischaracterizes the facts surrounding that litigation in its brief in opposition and the misuse of documents in connection with the same, (Br. at 5), a more accurate and complete account is provided in the accompanying declaration of Paulo da Silva. (*See generally* da Silva Decl.)

PAGE 3 – INTERVENORS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
       OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE
       ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

that Novalpina GP should be required to prepare its claim and defenses" without consulting with him. (Br. at 15.) Petitioner fails to provide any details of the process under which the documents were shared with Kowski, or whether he was informed of, and acknowledged, his obligations under the Protective Order. *See* Dkt. 36 at 6 ("Use or disclosure of Protected Material shall be restricted solely to the following persons, *who agree to be bound by the terms of this Order . . . .*") (emphasis added). Nor is there any explanation of Kowski's relevance as a "key fact witness." Notably, Kowski has yet to appear as a fact witness in any of the myriad litigations in which Novalpina GP appears as a party. (da Silva Decl. ¶¶ 9–10.) But even accepting the premise, allowing a "key fact witness" to review documents to assist Petitioner in bringing its claims (or raising its defenses) is a far cry from handing over an entire production of confidential documents to that "fact witness" and his counsel for personal use by that fact witness in litigation as to which Petitioner is not even a party. That, of course, is what has occurred here and is highly improper.[4]

Moreover, Petitioner's own brief strongly suggests that its intention to provide documents to non-parties for use in other litigation was long-standing, intentional and calculated. Indeed, by its own account, Petitioner (without explaining to Respondents' counsel what it was doing) intentionally edited the Protective Order in such a way that – as Petitioner would have it – allows it to make much broader use of the documents than it sought in the Petition or *represented* to the Court. Petitioner's edits expanded the protective order in two key ways, both directly relevant to the instant motion. First, by changing Sections 4.1(b), 4.1(c), and 4.2 from "litigation relating to this Petition" to "litigation relating to <u>the events described in</u> this Petition" Petitioner now claims that it can use

---

[4] Alternatively, Petitioner tries to contend that the documents were used "privately" in the various foreign proceedings in communications between counsel rather than having (yet) been attached to court filings. But leaving aside that the use remains improper and beyond the scope of the Petition, the primary purpose of Treo raising these concerns with the Court now is to prevent even further misuse of the documents produced by Respondent.

PAGE 4 –  INTERVENORS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE
ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

documents in litigation like Summons 4, despite having *expressly* told the Court just the opposite. (*See* Dkt. 52 at 6.)  Second, it expanded the universe of persons with access to the documents produced to include "direct or indirect shareholder, associate or affiliate" – language it now relies upon as authorizing the sharing of documents with non-parties like Kowski. (*Id*. at 5, 14.)  That is not a "conspiracy theory"; those are the facts as Petitioner describes them and they strongly suggest that Petitioner intended *all along* to make far broader use of the discovery it obtained than it led the Court to believe.  Notably, despite the passage of more than 15 months since the filing of the Petition, and while having had documents from Respondents for nearly six months at this point, Petitioner still has yet to commence the contemplated fraud claim and did not – until May 23, 2024, or well after Treo and Respondents had drawn these facts to this Court's attention – make use of a single document produced in the Veto Right Claim.[5]  And while Petitioner contends that the above is "totally irrelevant," to the contrary it is probative of Petitioner's intent in seeking the documents and the accuracy of the information provided to this Court in connection with the original application.[6]

In sum, Petitioner's misuse of documents in a manner directly contrary to its representations to this Court constitutes "newly discovered evidence" that warrants reconsideration.

---

[5] Moreover, as set forth more fully in the attached declaration of Paulo da Silva, even the belated recent use of materials in the Veto Right Claim litigation is questionable given that none of the documents used appear to have any actual relevance to the case or issues in dispute in that matter.  (da Silva Decl. ¶ 15.)  Unsurprisingly, they certainly do not contain the sort of "stunning revelations" Petitioner contends prompted the need for their use in other, undisclosed matters.

[6] More generally, and with the benefit of hindsight, Petitioner's prospective fraud claim seems almost too good to be true – a claim that had not yet been brought (and thus could not be responded to in specificity) and yet so broad in scope as to capture information and allegations relevant to other, existing litigations.  Indeed, Petitioner's own description of its subpoena as seeking "evidence that Treo and the LPAC had lied" and of "corruption in management of the Fund" (Dkt. 56 at 2) could at some level apply to *any* of the pending litigations between the parties in various foreign jurisdictions, making it all the more notable that Petitioner (i) still has done nothing to advance such a claim, and (ii) expressly disclaimed its intent to do what it has since – i.e., misuse documents obtained in other proceedings.

PAGE 5 – INTERVENORS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
       OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE
       ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

## II. The "Newly Discovered Evidence" is Material to the Court's Decision and Likely to Have Changed the Outcome

Alternatively, Petitioner contends that Treo cannot establish that the new information above is likely to have changed the disposition of the case. While Treo would not presume to tell this Court what was or was not relevant to its consideration of the Petition, we note at the outset that the issue of where the discovery sought would be used – and whether Respondents were parties to those actions – were among the issues the Court specifically asked about at the parties' only appearance on this matter. (*See* Dkt 25 at 9:24–10:10). These were also, as discussed herein, facts repeatedly referred to (and seemingly relied upon) in the Court's written opinion. That alone strongly suggests that reconsideration is warranted in light of the newly discovered evidence summarized above and in Treo's opening brief.

In particular, as Petitioner concedes, the new information is relevant to consideration of the first *Intel* factor – i.e., whether the person from whom discovery is sought is a participant in the foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Here, Respondent Langdon is a party to Summons 4, one of the cases in which highly confidential documents have been misused since their production, and that was among the contexts in which Petitioner expressly – and falsely – represented to this Court that it would *not* use documents outside of the two litigations identified in the Petition. The Court appears to have understandably relied upon those representations. Dkt. 32 at 5 (granting discovery because "Langdon and Read *are not parties* to the proceeding for which discovery is sought, so the information cannot be obtained directly through that proceeding.") (emphasis added).

But *Intel* requires consideration of a broader range of factors, including whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Here, with respect to

PAGE 6 – INTERVENORS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
       OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE
       ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

Summons 4, as noted in Treo's opening brief – and its briefing in opposition to the original Petition – Novalpina GP has already made a discovery request of the court in Luxembourg overseeing the Summons 4 litigation that seeks from Michael Langdon much of what is sought in the Petition. (Dkt. 50, ¶ 5.) The Court in Luxembourg – the forum Petitioner selected through a binding forum selection clause in the Limited Partnership Agreement *it drafted* – has not acted on that request and Petitioner, having grown impatient, has effectively asked this Court to order what the Luxembourg Court overseeing the case has, at least to date, not done. That is precisely the sort of improper conduct that leads courts to *deny* Section 1782 requests (Dkt. 28 at 8–11), and was another context in which Petitioner assured this Court it would not use the requested materials in Summons 4. It was also relied upon in the Court's finding that this third *Intel* factor did not weigh against the Petition. *See* Dkt. 32 at 7, n.2 ("As noted above, Langdon and Read *are not parties to the proceeding for which this discovery is sought*. This Court accordingly does not view the petition as an attempt to circumvent the LPA's forum selection clause, but rather an attempt to obtain information from foreign individuals who reside in this District, as directly contemplated by section 1782.") (emphasis added).

Moreover, the Court had no opportunity to consider even the possibility that documents produced by Respondent would be used by *different litigants* in *different forums*, facts that bear directly on both the statutory and discretionary factors relevant to a Section 1782 Petition. Petitioner dismisses those concerns, arguing that "federal discovery rules allow documents to be shared and used in other litigation by default" and cites cases in which Courts permitted petitioners to use documents obtained for one foreign proceeding to use them in others. (Br. at 7.) But none of those cases involved the facts present here – that is, uses that are directly contrary to express representations made by the petitioners in seeking discovery.

PAGE 7 – INTERVENORS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
        OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE
        ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

For example, in *JSC MCC EuroChem v. Chauhan*, No. 3:17-MC-00005, 2018 WL 3872197, at *7 (M.D. Tenn. Aug. 15, 2018), cited by Petitioner, the court denied a motion for reconsideration where the petitioner, having obtained discovery for one foreign proceeding, used it in another, noting that the respondent had been aware of the pendency of the other proceedings at the time of the original petition and thus "had the opportunity to raise the issue . . . in his original briefing." *Id.* at *7. Here, of course, Treo *did* raise the issue of use in other matters, including Summons 4, in its original briefing, which was the context in which Petitioner provided answers that were inaccurate. Similarly, in *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y. 1973) relied upon by Petitioner, the court left open the possibility that use of documents in proceedings other than those identified in a petition might be improper where "it can be shown that the discovering party is exploiting the instant litigation solely to assist in other litigation before a foreign forum."

Here, Petitioner appears to be doing just that, having, among other things, immediately provided those documents to non-parties for use in other litigations in other foreign forums. *Cf. Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 159 n.6 (2d Cir. 2022) (noting that denial of a Section 1782 Petition would be appropriate if the foreign litigation cited was "pretextual" but making no such finding there because petitioner "promptly used [the discovery] in [the relied upon] proceeding as soon as it obtained them"). Notably, one of those non-parties – Kowski – is not only completely unaffiliated with Petitioner at this point but subject to both criminal and regulatory investigation, (e.g., da Silva Decl. at ¶¶ 9–10), facts that might well weigh on the Court's evaluation of whether he should be entitled to confidential state documents. Moreover, as noted above, Kowski's use of discovery produced has not been in his capacity as an

PAGE 8 – INTERVENORS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
        OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE
        ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

indirect shareholder of Novalpina GP, but to defend against claims in his individual capacity. (Dkt. 49, ¶ 3.)

Moreover, as Petitioner's opposition itself makes clear, Kowski has derived a substantial benefit by *not* pursuing Section 1782 relief in his own name. In particular, as Petitioner would have it, because Kowski is not a party to this matter he remains beyond the reach of this Court (or a reciprocal discovery order) since this "Court does not acquire jurisdiction over Mr. Kowski simply because he has used documents produced in the United States." (Br. at 16–17.) As an initial matter, this is untrue – to the extent Kowski was permitted to receive documents under the terms of the Protective Order (as Petitioner maintains), Kowski was required to agree to abide by that Order, *see* Dkt. 36 at 6, and is thus squarely within this Court's authority. But perhaps more important, for present purposes, no such argument could be made if Kowski had been required to seek discovery himself for his personal use in litigations as to which Novalpina GP is not a party.[7]

More generally, serious questions about the accuracy of representations made to the Court by Petitioner in seeking relief warrants revisiting the decision to grant the same. And while there may not be many cases granting motions for reconsideration of Section 1782 Petitions generally, where a Court has relied on inaccurate information, a motion for reconsideration is an appropriate mechanism for remedying that harm. *See, e.g.*, *In re Levander*, 180 F.3d 1114, 1120 & n.5 (9th Cir. 1999); *In re Meridian Sunrise Vill., LLC*, No. 13-05503 RBL, 2014 WL 1744166, at *2 (W.D. Wash. Apr. 30, 2014) ("Relief from judgment under Rule 60(b) is appropriate to correct judgments that rely on false or misleading testimony.").

---

[7] At a minimum, given Petitioner's position that Kowski is an "interested party" and a "key fact witness," the Court should grant Respondents' request for reciprocal discovery and order the deposition of Kowski. (Dkt. 52 at 14, Dkt. 56 at 15.) Petitioner's contention that Respondents failed to attach document requests (Dkt. 52 at 16 n.1) overlooks Exhibit A to their filing.

PAGE 9 – INTERVENORS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
    OF THE GRANT OF NOVALPINA GP'S PETITION OR, IN THE
    ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

To be clear, the documents produced by Respondents did not contain "stunning revelations." (Br. at 8.) They certainly do not support any baseless claim that Respondents or Treo "lied" in any foreign litigation or to any foreign tribunal.[8] But in a universe where document discovery is not generally permitted – and thus Petitioner (and now Kowski and others) alone get to weaponize documents taken out of context – the risk of abuse is both enormous and self-evident. That is precisely why both the statute and the Supreme Court have imposed parameters around when Section 1782 relief should be available, to ensure that U.S. courts are not being used to supplant foreign courts presiding over foreign litigations. It is also why both the statute and precedent dictate that a court consider a series of factors relevant to how the documents sought will be used before granting a Petition. Petitioner's conduct here effectively deprived this Court of that opportunity which is why reconsideration is appropriate.

## CONCLUSION

For the foregoing reasons, Treo respectfully requests the Court (1) reconsider its order granting Novalpina GP's Petition; or, in the alternative (2) modify the existing Protective Order to limit use to (i) Novalpina GP, its *current* employees, and its *current* counsel; and (ii) in the Veto Right Litigation and the prospective fraud claim (should one ever be brought); and (3) order that Petitioner take sufficient steps to claw back any documents previously shared with Kowski, Novalpina FP, or any other party.

---

[8] Just by way of example, Petitioner contends that documents produced by Respondent showed that Treo had made "false" statements in connection with the litigation of Kowski's role in facilitating a €1 million bribe in connection with the acquisition of LXO, a payment Petitioner disingenuously labels a "success fee." Leaving aside that "success fee" was paid to a French banker via a shell entity in the Middle East and to an account in Puerto Rico at a bank that has since been shut down by U.S. law enforcement, the document misused by Kowski and Petitioner intentionally overlooks other documents in the same production which make very clear that Treo's position in the instant litigation is entirely accurate and abundantly supported by Langdon and Treo's emails.

PAGE 10 – INTERVENORS' REPLY IN SUPPORT OF MOTION FOR
        RECONSIDERATION OF THE GRANT OF NOVALPINA GP'S PETITION OR,
        IN THE ALTERNATIVE, TO AMEND THE PROTECTIVE ORDER

DATED: May 24, 2024

                ANGELI LAW GROUP LLC

                *s/ Peter D. Hawkes*
                David H. Angeli, OSB No. 020244
                david@angelilaw.com
                Peter D. Hawkes, OSB No. 071986
                peter@angelilaw.com
                121 SW Morrison Street, Suite 400
                Portland, OR 97204
                Telephone: (503) 954-2232
                Facsimile: (503) 227-0880

                MCDERMOTT WILL & EMERY LLP

                *s/ Edward B. Diskant*
                Edward B. Diskant (pro hac vice)
                ediskant@mwe.com
                MCDERMOTT WILL & EMERY LLP
                1 Vanderbilt Avenue
                New York, NY 10017
                (212) 547-5754 (office)

                *s/ James P. Durkin*
                James P. Durkin (pro hac vice)
                jdurkin@mwe.com
                MCDERMOTT WILL & EMERY LLP
                444 West Lake Street, Suite 4000
                Chicago, IL 60606
                (312) 984-2062 (office)

                *Attorneys for Treo Asset Management LLC and Treo NOAL GP*