# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE PETITION OF NOVALPINA CAPITAL PARTNERS I GP S.À.R.L. FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Case No. 3:23-mc-00082-IM<br><br>**OPINION AND ORDER GRANTING IN PART MOTION TO COMPEL** |

Tara J. Plochocki, Sequor Law, 650 Massachusetts Ave. NW, Suite 600, Washington, DC 20001; and Jesse Mondry, Harris Bricken Sliwoski, LLP, 511 SE 11th Avenue, Suite 201, Portland, OR 97214. Attorneys for Petitioner.

Ian M. Christy and Thomas C. Sand, Miller Nash LLP, 1140 SW Washington Street, Suite 700, Portland, OR 97205. Attorneys for Respondents.

**IMMERGUT, District Judge.**

Now before the Court is a Motion to Compel ("Mot."), ECF 73, filed by Petitioner Novalpina Capital Partners I GP S.à r.l. Petitioner seeks to compel Respondents Tobias Read and Michael Langdon to produce certain documents that Respondents currently withhold based on attorney-client privilege or the attorney-work-product protection. Respondents oppose Petitioner's Motion. Response to Motion to Compel ("Resp."), ECF 84 at 2. For the following reasons, this Court DENIES the motion as to communications between Respondents and Proskauer Rose, but GRANTS as to communications between Respondents and the other limited

PAGE 1 – OPINION & ORDER GRANTING IN PART MOTION TO COMPEL

partners. To the extent these communications contain attorney-client-privileged communications or attorney work product, however, Respondents should provide the emails with such privileged or protected material redacted as described below.

## BACKGROUND

Petitioner Novalpina is the former general partner of Novalpina Capital Partners I SCSp, a private equity fund. Declaration of Nicolas Thieltgen, ECF 6 ¶ 10. The Oregon Public Employees Retirement Fund ("OPERF"), a retirement fund managed by the Oregon State Treasury, was a limited partner in the fund. Declaration of Michael J. Langdon ("Langdon Decl."), ECF 86 ¶¶ 2, 4. Respondent Michael Langdon is the Director of Private Markets for the Oregon State Treasury Investment Division. *Id.* ¶ 2. Langdon served as the chair of the fund's Limited Partners Advisory Council ("LPAC") in his official capacity as a representative of OPERF. *Id.* ¶ 4. In July 2021, OPERF, along with other limited partners, removed Petitioner as general partner. *Id.* ¶ 21. Before removing Petitioner, most of the limited partners—but not OPERF—retained the law firm Proskauer Rose. *Id.* ¶ 13. In February 2021, OPERF filed a certification memorializing its common interest with the other limited partners. Certification, ECF 86-4, Ex. D.

Petitioner now seeks to compel production of two categories of emails: (1) 172 emails between Respondent Langdon and other limited partners on which no attorney was listed during the time period from January 2021 to April 2022, and (2) a broader category of emails between Respondent Langdon and attorneys from Proskauer Rose that did not include either counsel retained by OPERF or its in-house counsel. Mot., ECF 73 at 8; *see* Declaration of Tara J. Plochocki, ECF 74, Ex. 13 (identifying the 172 emails). Respondents withheld these documents on the basis of attorney-client privilege, the common-interest doctrine, and the work-product doctrine. *Id.* at 6–7.

PAGE 2 – OPINION & ORDER GRANTING IN PART MOTION TO COMPEL

## LEGAL STANDARD

The attorney-client privilege protects from disclosure confidential communications between attorneys and clients for the purpose of providing and receiving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Whether information is covered by the attorney-client privilege is determined by an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (citation omitted).

Voluntarily disclosing attorney-client privileged documents to a third party will typically destroy the privilege. *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126–27 (9th Cir. 2012). The common-interest doctrine provides a limited exception to this rule, allowing "attorneys for different clients pursuing a common legal strategy to communicate with each other" to more effectively prosecute or defend their claims. *Id.* at 1129; *see also Cont'l Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964) (first recognizing this exception). The doctrine serves to protect "communications passing . . . 'from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'" *United States v. Austin*, 416 F.3d 1016, 1021 (9th Cir. 2005) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)).[1]

---

[1] *Austin* addressed what is referred to the "joint defense privilege" in the criminal context. The Ninth Circuit has recognized that the same privilege is "also referred to as the 'common interest' privilege or doctrine" and applies beyond the criminal sphere to civil cases or situations where litigation has not yet commenced. *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012).

The common-interest doctrine "applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not [otherwise] been waived." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (quoting *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)). The Ninth Circuit has held that the first element requires that the communication be made "in pursuit of a joint strategy in accordance with some form of agreement," whether written or unwritten, and not merely out of a "shared desire to see the same outcome in a legal matter." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. The second requirement means that the privilege shields statements "intended to facilitate representation," *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965), but not all communications between the parties to the joint agreement.

The work-product doctrine protects "documents and tangible things prepared by a party or his representative in anticipation of litigation" from discovery. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (citation omitted). Like the attorney-client privilege, disclosure of the document may waive the work-product doctrine under certain circumstances. *Id.* at 1121. And like the attorney-client privilege, parties do not waive the work-product protection by communicating with individuals with whom they share a common legal interest. *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 646 (E.D. Cal. 2014).

The party seeking to invoke the attorney-client privilege or work-product protection bears the burden of establishing that the communications at issue are privileged. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (citation omitted).

**DISCUSSION**

This Court first addresses the emails between Langdon and Proskauer Rose and finds that these emails fall within the scope of the attorney-client privilege. Although Langdon and OPERF did not retain Proskauer, OPERF shared a common legal interest with the other limited partners in the fund such that the privilege may extend to cover these communications.

This Court next addresses the emails between Langdon and the limited partners. The Court finds that these emails are not entitled to blanket attorney-client privilege or work-product protections. This Court adopts a three-part test to define when communications among non-attorneys sharing a common interest may benefit from attorney-client or work-product protections. This test requires a case-by-case analysis of each communication. The Court will accordingly allow Respondents to clearly redact privileged communications or protected work product before producing the documents. Petitioner may seek in camera review of such documents to the extent that Respondents' redactions warrant such review.

**A.  Emails Between OPERF and Proskauer**

This Court first addresses the emails between Respondent Langdon and Proskauer Rose, the counsel for the other limited partners. These emails appear to be protected by the common-interest doctrine. The doctrine operates to extend attorney-client privilege to communications "from one party to the attorney for another party," *Austin*, 416 F.3d at 1021, when the parties share a common legal interest. Petitioner contends that the shared interest was "commercial at its core," not legal. Mot., ECF 73 at 14–15. This Court disagrees.

To benefit from the common-interest doctrine, a communication must have been made in the course of a matter of common legal interest. The common interest must be "legal, as opposed to commercial," *Nidec Corp.*, 249 F.R.D. at 579, and must go beyond "a shared desire to see the same outcome in a legal matter," *In re Pac. Pictures Corp.*, 679 F.3d at 1129. The

PAGE 5 – OPINION & ORDER GRANTING IN PART MOTION TO COMPEL

communication must be made "in pursuit of a joint strategy in accordance with some form of agreement" between the parties. *Id.* This agreement may be "implied from conduct and [the] situation." *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012).

Although ongoing litigation is the classic example of a joint legal interest, the privilege may arise prior to litigation. *See id.* at 978; *Nidec Corp.*, 249 F.R.D. at 578. For example, the privilege may apply when the parties are likely to become "involved in 'anticipated joint litigation.'" *Id.* (quoting *Union Carbide v. Dow Chem.*, 619 F. Supp. 1036, 1047 (D. Del. 1985); *see, e.g.*, *Rembrandt Patent Innovations, LLC v. Apple Inc.*, Nos. C 14-05093, C 14-05094, 2016 WL 427363, at *7 (N.D. Cal. Feb. 4, 2016) (finding a common legal interest where parties were communicating to identify targets for litigation).

OPERF and the other limited partners that together comprised the LPAC had a shared legal interest. As limited partners and as members of the LPAC, they had a collective interest in the management of the fund and in understanding the rights and "legal and regulatory risks" that accompanied their position. Declaration of Dorothy Ann Murray ("Murray Decl."), ECF 87 ¶ 4. OPERF memorialized this shared interest through a document signed by the Oregon State Treasury's Chief Investment Officer in February 2021, Certification, ECF 86-4, Ex. D, reflecting "some form of agreement," *In re Pac. Pictures Corp.*, 679 F.3d at 1129. This shared interest in understanding their legal rights and risks, while doubtlessly overlapping with commercial considerations, provides an adequate common legal interest for the doctrine. *See Centerline Hous. P'ship I, L.P.-Series 2 v. Palm Cmtys.*, No. 21-cv-00107, 2021 WL 4895746, at *12 (C.D. Cal. Sept. 2, 2021) (finding general partners had a common interest in seeking legal advice on exiting limited partners from partnership under analogous California privilege).

Potential litigation also provides a common legal interest for OPERF and other LPAC members. As early as February 2021, OPERF anticipated "litigation against the LPAC, or members of it." Langdon Decl., ECF 86 ¶ 16. The other members of the LPAC likewise "understood that there was a significant risk of legal challenge to any action taken by them." Murray Decl., ECF 87 ¶ 5. The members of the LPAC, in short, anticipated that they would be brought into a lawsuit in which they would have a common interest and "could be expected to conduct a joint defense." *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987). This shared threat of litigation, in which the interests of the members of the LPAC would be "identically aligned," *id.*, also suffices to provide a common legal interest here.

Even if the interest here were primarily commercial, as Petitioner maintains, the privilege requires only that the shared interest "be legal, not *solely* commercial." *Union Carbide*, 619 F. Supp. at 1047 (emphasis added) (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)). As explained above, OPERF shared legal interests with other members of the LPAC, even if the members of the LPAC also shared commercial motivations. The interests at stake were not purely commercial, and thus the common-interest doctrine applies to shield communications in furtherance of that shared interest.

## B. Emails With No Attorney Present

Petitioner next contends that 172 identified emails cannot be privileged because no attorney was included on these communications. Mot., ECF 73 at 10–11. The Court agrees with Petitioner that these emails are not entitled to the attorney-client privilege merely because they discuss or reflect attorney advice. Instead, this Court adopts a narrower test: These emails may be attorney-client privileged if they are seeking or relaying confidential information on behalf of an attorney. Some of these emails may also be protected because they are communicating work product related to the litigation. The Court will accordingly order production of these 172 emails,

PAGE 7 – OPINION & ORDER GRANTING IN PART MOTION TO COMPEL

but permit Respondents to redact portions of the emails that fall into the categories outlined below.

### 1. Attorney-Client Privilege

This Court first addresses Respondents' suggestion that the attorney-client privilege should extend to communications between non-lawyers that "discuss" or "reflect" legal advice. Resp., ECF 84 at 12. This rule appears to be a unique feature of intra-corporate communications. This Court will not extend it to this case.

The attorney-client privilege protects "confidential communications between attorneys and clients," *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011), made "*primarily* for the purpose of generating legal advice," *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990) (emphasis in original). The privilege requires that "legal advice" be sought "from a professional legal adviser," *Graf*, 610 F.3d at 1156 (citation omitted), and so typically a lawyer's involvement in the communication is a necessary condition to the application of the privilege. The attorney-client privilege can extend to communications between non-lawyer employees for a corporate party, but only to the extent their communications "discuss or transmit legal advice given by counsel" and discuss their "intent to seek legal advice about a particular issue." *Dolby Lab'ys Licensing Corp. v. Adobe, Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019); *Valmarc Corp. v. Nike, Inc.*, No. 3:21-cv-1556-IM, 2024 WL 166101, at *1 (D. Or. Jan. 16, 2024) (same).

Respondents do not identify, and this Court cannot locate, any case law extending the attorney-client privilege to communications between non-lawyers employed by different legal entities that discuss or reflect legal advice. *Dolby Laboratories* involved non-lawyer employees discussing legal guidance from Adobe's in-house counsel. 402 F. Supp. at 871. The cases cited by Respondents, Resp., ECF 84 at 12, are likewise about non-lawyer employees of a single corporation discussing communications from that corporation's counsel. *See AT&T Corp. v.*

PAGE 8 – OPINION & ORDER GRANTING IN PART MOTION TO COMPEL

*Microsoft Corp.*, No. 02-0164, 2003 WL 21212614, at *3–4 (N.D. Cal. Apr. 18, 2003) (finding internal documents about "matters upon which [the corporation] intended to seek legal advice" were privileged); *Helget v. City of Hays*, No. 13-2228, 2014 WL 1308890, at *3 (D. Kan. Mar. 28, 2014) (finding internal communications made in response to city counsel's requests were privileged). Other cases reviewed by the Court involved similar circumstances, *see, e.g.*, *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 514–15 (S.D. Cal. 2003); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076–77 (N.D. Cal. 2002) (discussing "internal communications"); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

The extension of the attorney-client privilege to intra-corporate communications between non-lawyers is necessary to facilitate the representation of the corporation itself. *See Eutectic Corp. v. Metco, Inc.*, 61 F.R.D. 35, 40 (E.D.N.Y. 1973); *see also McCook Metals LLC v. Alcoa, Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000) ("Management should be able to discuss amongst themselves the legal advice given to them as agents of the corporation with an expectation of privilege."); *Ozgur v. Daimler Trucks N. Am. LLC*, No. 3:19-cv-00432-JR, 2020 WL 2522024, at *2 (D. Or. May 18, 2020) (reasoning that corporate employees "together constitute the same corporate client who is seeking the legal advice"). Respondents suggest that the same rationale should apply to members of the LPAC, "[j]ust as in a corporate setting." Resp., ECF 84 at 13. But it is not apparent to the Court that the members of the LPAC, even if most of them retained the same counsel, are analogous to corporate employees bound by an agency relationship. *See Sanmina Corp.*, 968 F.3d at 1116 (noting that attorney-client privilege may extend to agents of the client). The attorney-client privilege accordingly does not extend to these documents, unless the common-interest doctrine applies.

### 2.  Common-Interest Doctrine

The extent to which the common-interest doctrine may shield communications between non-attorneys is not clear under existing law. Some authorities have flatly held that only communications with or among attorneys, not between litigants, may be protected from disclosure by the doctrine. *See, e.g.*, *Middleton v. Canfield*, No. 3:21-cv-01790-MO, 2022 WL 11809303, at *2 (D. Or. Oct. 20, 2022) ("[I]t is communications between *attorneys* for litigants that are protected by the common interest privilege, not direct communications between litigants themselves." (emphasis in original)). Others state that communications among non-attorneys may fall within the ambit of the common-interest doctrine, without defining which communications are protected and which are not. *See, e.g.*, *Gonzalez*, 669 F.3d at 978 (noting that the doctrine allows "persons who share a common interest in litigation . . . to communicate with their respective attorneys *and with each other* to more effectively prosecute or defend their claims." (emphasis added) (quoting *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990))); *Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1020 (N.D. Cal. 2022) (holding that the doctrine "applies more strongly when the disclosure is made in the presence of counsel").

In light of these competing authorities, and recognizing the Ninth Circuit's suggestion in *Gonzalez* that at least some communications among parties with a common interest may be privileged, this Court adopts a three-part approach from the Northern District of Illinois. Under this approach, a communication between two parties sharing a common interest, even outside the presence of counsel, may be privileged "if (1) one party is seeking confidential information from the other on behalf of an attorney; (2) one party is relaying confidential information to the other on behalf of an attorney; and (3) the parties are communicating work product that is related to the litigation." *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, No. CIV. A. 97 C 5827,

1999 WL 617842, at *6 (N.D. Ill. Aug. 12, 1999). This approach aligns with the Restatement

(Third) of the Law Governing Lawyers, which states that a communication directly among the

clients may be privileged if "made for the purpose of communicating with a privileged person,"

§ 76 cmt. d (Am. L. Inst. 2000), as well as the suggestion in *Nidec Corp.* that communications

among the clients are protected if made "on matters of common legal interest, for the purpose of

preparing a joint strategy." *Nidec Corp.*, 249 F.R.D. at 578 (quoting 1 Paul R. Rice, Attorney-

Client Privilege in the United States § 4:35, at 192 (1999 ed.)).

      Applying this standard requires a case-by-case analysis of each communication.

Respondents state that most of the 172 emails include the term "Proskauer," the name of a

Proskauer partner, or the domain name "@proskauer.com." Declaration of Ian M. Christy, ECF

85 ¶ 4. But the mere presence of, or reference to, an attorney at some point in the email chain

does not mean that the protection applies to the entire chain. The email must be seeking or

relaying advice "on behalf of an attorney," or communicating work product.

      Respondents assert that many of the emails included in these email chains are

transmitting legal advice from Proskauer. Resp., ECF 84 at 13, 15. To the extent that the email

chains are seeking or relaying legal advice "on behalf of an attorney," or contain attorney work

product, the Court will allow Respondents to redact such communications or work product

before producing the documents. These redactions must be conspicuously indicated, should be

limited to particular emails or portions of emails instead of entire chains, and should not redact

the To, From, Subject, and Date lines on the redacted emails. Petitioner may seek in camera

review should Petitioner believe that documents are being improperly withheld.

    **3. Work Product**

      Respondents also seek to withhold production of these emails as attorney work product,

arguing that Langdon's communications with other LPAC representatives "included confidential

emails sent or received in anticipation of litigation." Resp., ECF 84 at 14. The application of the work-product protection here is governed by the *IBJ Whitehall* test outlined above, which addresses the possibility of the parties "communicating work product that is related to the litigation." This section offers additional clarification as to how the work-product doctrine does and does not apply to this case.

The work-product doctrine is intended "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation." *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021) (quoting *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)). The protection may extend to materials "prepared by agents for the attorney as well as those prepared by the attorney." *United States v. Nobles*, 422 U.S. 225, 238–39 (1975). To qualify for protection as work product, a document must have been prepared (1) "in anticipation of litigation or for trial," and (2) "by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (citation omitted).

The emails to and from Langdon and the other limited partners are not themselves attorney work product. The work-product doctrine primarily operates to shield materials "created by an attorney or agents of the attorney." *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 641 (D. Or. 2019). Some courts have extended the doctrine to materials "produced by a client at the direction of counsel," *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010), but that limited extension does not appear to apply to all of the emails here. That Langdon's communications may have "relate[d] to the possibility of litigation involving the LPs," Resp., ECF 84 at 14, does not transform them into attorney work product. Likewise, although the Court agrees that the limited partners were anticipating litigation as early

as February 2021, this fact does not mean that all of the 172 emails may fairly be said to have

been "created because of anticipated litigation." *In re Grand Jury Subpoena*, 357 F.3d at 908

(citation omitted). Reaching that conclusion will require a case-by-case analysis of their contents

to determine whether the emails were produced at the direction of an attorney or an attorney's

agent.

It is possible, based on Respondents' representations described above, that the work-

product doctrine may apply to some of the contents of particular email chains. For example, an

email prepared by an attorney at Proskauer Rose in anticipation of litigation would be work-

product protected. Forwarding that email to Langdon would not waive the protection in light of

this Court's above analysis of the common-interest doctrine. *See Sanmina Corp.*, 968 F.3d at

1121 (holding that disclosure of work product to a third party only waives the protection if that

disclosure substantially increased the opportunities for potential adversaries to obtain that

information); *Rodriguez*, 620 F. Supp. 3d at 1020 (noting that the common-interest doctrine

"preserves work-product protection over materials communicated to third parties" that "generally

share the client's interests").

## CONCLUSION

Petitioner's Motion to Compel, ECF 73, is GRANTED IN PART and DENIED IN PART

as outlined above. The motion is denied as to communications between Respondents and

Proskauer Rose. The motion is granted as to communications between Langdon and the other

limited partners. The Court will allow Respondents to redact portions of those communications

that are seeking or relaying legal advice on behalf of an attorney or that contain attorney work

product, as described above. Respondents should complete their redactions and produce these

documents to Petitioner within seven days of this Opinion and Order. Petitioner may seek in

camera review should Petitioner believe that documents are being improperly withheld.

The parties are ordered to file a status report within sixty days of the issuance of this Opinion and Order indicating whether they anticipate any further proceedings.

**IT IS SO ORDERED.**

DATED this 26th day of March, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge